[No. 55880–9. En Banc. October 12, 1989.]

R/L Associates, Inc., *Respondent,* v. The City of Seattle, *Appellant.*

*Douglas N. Jewett, City Attorney,* and *Sandra M. Watson, Assistant,* for appellant.

*Richard B. Sanders,* for respondent.

*David Girard* and *Steve Fredrickson* on behalf of Evergreen Legal Services, amici curiae for appellant.

*Ronald A. Zumbrun, Edward J. Connor, Jr., John M. Groen,* and *Ben J. Gantt, Jr.,* on behalf of Pacific Legal Foundation; *William H. Ellis* on behalf of Northwest Legal Foundation, amici curiae for respondent.

BRACHTENBACH, J.—In 1985, the City of Seattle enacted the Housing Preservation Ordinance (HPO) in an effort to address problems associated with the City's diminishing supply of low and moderate income housing. Seattle Municipal Code (SMC) 22.210 *et seq.* Two of the stated purposes of the HPO are to "mitigate the loss of scarce housing resources caused by redevelopment and change of use;" and "provide relocation assistance to low–income persons displaced by demolition or change of use." SMC 22.210.020(B)(1), (4).

This case involves a challenge to the validity of certain provisions of the HPO that require the owners of low income rental units to provide low income tenants with advance notice, eviction protection, and relocation assistance prior to demolishing or changing the use of residential units. Issuance of a required demolition license is conditioned upon compliance with these "tenant assistance provisions." SMC 22.210.050. A brief description of the challenged provisions follows.

SMC 22.210.080 (Section 8) requires that notice be sent to the tenant at least 120 days prior to issuance of a demolition license informing the tenant of the proposed displacement, explaining the tenant's right to remain in possession until demolition unless evicted for good cause, and explaining the potential relocation assistance available to low income tenants.

SMC 22.210.090 (Section 9) provides that affected tenants cannot be evicted during the 180–day period prior to application for the demolition license unless an enumerated good cause exists. A tenant evicted contrary to the requirements of this section will receive relocation assistance.

SMC 22.210.100 (Section 10) requires owners to assist in relocating low income tenants by either actually relocating the tenant to comparable housing, or making a payment to the tenant in the form of excused rent or cash in an amount not to exceed $2,000 depending upon the income of the tenant.

In May 1986, respondent, R/L Associates, Inc. (R/L), contracted to purchase a house in Seattle which had been rented to a low income family since 1982. R/L intended to demolish the house and replace it with a new rental house. In June 1986, R/L applied for a master use permit to demolish the house and build a new one. As required by Seattle's HPO, R/L applied for a demolition license. R/L obtained a license in August 1986, but without having complied with the tenant assistance provisions of the HPO. Thus, the City ordered work stopped on R/L's demolition August 9, 1986, prompting R/L to file the instant lawsuit.

Initially, R/L sought a writ of mandamus requesting that the court order the City to approve the grant of the demolition license. The trial court dismissed the writ, but granted R/L leave to amend its pleadings. The court ordered the City to issue the demolition license provided R/L pay $2,000 into the registry of the court. That was the amount payable to the tenant based on the tenant's estimated income. There is no restriction on use of the money by the tenant. The tenant's income in fact was $24,838.46, which entitled him to a payment of $1,000 rather than the $2,000 maximum. The license was issued, and R/L filed its amended complaint for damages and equitable relief challenging the tenant assistance provisions of the HPO.

On R/L's motion for partial summary judgment, the Superior Court entered a declaratory judgment invalidating the tenant assistance provisions of the HPO, issued a permanent injunction enjoining the City from enforcing the provisions, held the City liable as a matter of law to R/L for all damages sustained as a proximate result of the City's enforcement of the ordinance, and awarded R/L attorney fees.

The City continued to enforce the tenant assistance provisions of the HPO in demolition license applications for projects other than those in which R/L was involved. One such application involved the Fremont Dock Company, Inc. (Fremont Dock), which is not a party to the present lawsuit. Upon denial of its application, Fremont Dock filed a

separate action for injunctive relief against the City. As a result of the City's continued enforcement of the tenant assistance provisions against Fremont Dock, R/L filed a motion in superior court seeking to have the City, its director of the Department of Construction and Land Use, and the HPO administrator, found in contempt for failure to comply with the permanent injunction ordered in the present case. The Superior Court granted R/L's motion, and entered a judgment of contempt against these appellants.

In this appeal, R/L argues that the tenant assistance provisions of the HPO are a facially invalid exercise of the City's police power to regulate the development of land,[1] and that the provisions effect a taking of private property without just compensation. R/L further argues that it has the right to enforce the trial court's permanent injunction via contempt proceedings against the City and its officials. R/L seeks just compensation for the taking, if one occurred, damages resulting from the enforcement of the tenant assistance provisions of the HPO, and attorney fees.

The validity of the tenant assistance provisions is tested under RCW 82.02.020, which provides in part:

> No county, city, town, or other municipal corporation shall impose any tax, fee, or charge, either direct or indirect, on the construction or reconstruction of residential buildings, commercial buildings, industrial buildings, or on any other building or building space or appurtenance thereto, or on the development, subdivision, classification, or reclassification of land.

Laws of 1982, 1st Ex. Sess., ch. 49, § 5 (effective July 1, 1982).

This amendment was enacted as part of comprehensive legislation that included the grant of authority to certain local governments to impose additional sales and real estate transfer taxes. Along with this additional taxing authority,

---

[1]Similar provisions of the HPO were recently struck down as an invalid exercise of the City's police power in *San Telmo Assocs. v. Seattle,* 108 Wn.2d 20, 735 P.2d 673 (1987).

the Legislature imposed a prohibition of certain develop-
ment fees. *See* Engrossed Senate Bill 4972, §§ 5, 11(2),
17(2), 47th Legislature (1982). This amendment was the
first to confront the imposition of fees as a condition to
development, even though there had been other proposals
before the Legislature to expand or limit municipalities'
authority to impose such fees. *See* Comment, *Subdivision
Exactions in Washington: The Controversy Over Imposing
Fees on Developers,* 59 Wash. L. Rev. 289, 294 n.40 (1984).

 The City argues that RCW 82.02.020 simply does
not apply to the tenant assistance provisions because those
provisions focus on demolition and change of use, which are
not necessarily involved in any of the conduct prohibited by
the statute, and because no fee, charge, or tax is paid to the
City. These contentions are unpersuasive. First, the statute
prohibits the imposition of any indirect fee or charge; it is
not limited only to payments made to the City. Second, a
charge on demolition or change in use of residential units
certainly constitutes, at least, an indirect charge on either
the construction of residential units or the development of
land generally. Implicit in the concepts of construction and
development is the need to remove and replace worn out
structures. RCW 82.02.020 is clearly applicable to the ten-
ant assistance provisions.[2]

The City further argues that a literal application of the
statute would lead to the invalidation of "all otherwise
valid police power regulations regarding development which
incidentally impose an economic burden." Brief of Appel-
lant, at 25. The City asserts that this could not have been
the intent of the Legislature. The City is mistaken in its
conclusion that all development regulations are invalid

---

[2]Subsequent to oral argument, the City filed a statement of additional author-
ities citing a recently enacted statute for the proposition that the Legislature did
not intend payment of relocation assistance to constitute a prohibited develop-
ment fee. *See* Laws of 1989, ch. 201 ("Mobile Home Relocation Assistance" act).
We decline to consider the question of whether the statute defines tenant reloca-
tion assistance in terms of development fees because even if it did, RCW 82.02.020
would not prohibit *State* imposition of such an exaction.

under the statute. Quite the contrary is true, and the statute clearly and specifically outlines the scope of valid regulation.

For example, dedications of land and easements pursuant to RCW 58.17.110 (subdivision and dedication approval) are not prohibited if they are within the proposed development and reasonably necessary as a direct result of the proposed development to which they apply. Nor are costs associated with the permit application process prohibited. Moreover, the statute's general prohibition does not apply to imposition of pro rata water, sewer, natural gas, drainage utility, and drainage system charges that are attributable to the property being charged. Finally, the statute allows for voluntary agreements to allow payments in lieu of dedication or to mitigate a direct impact identified as a consequence of the proposed development. This attention to detail implies that the Legislature intended RCW 82.02.020's general prohibition to operate absent application of an exception. *See In re Eaton,* 110 Wn.2d 892, 898, 757 P.2d 961 (1988).

We recognize that prior cases have resisted a literal application of RCW 82.02.020, instead focusing attention on whether a development fee constituted an unauthorized tax or a valid regulatory scheme, as that distinction was explained in *Hillis Homes, Inc. v. Snohomish Cy.,* 97 Wn.2d 804, 809, 650 P.2d 193 (1982).

For example, in *Ivy Club Investors Ltd. Partnership v. Kennewick,* 40 Wn. App. 524, 529, 699 P.2d 782, *review denied,* 104 Wn.2d 1008 (1985), the Court of Appeals stated that "RCW 82.02.020 . . . supersedes the decision in *Hillis Homes, Inc. v. Snohomish Cy., supra* . . ." However, the court did not rely on a literal reading of RCW 82.02.020 to invalidate the park fees in that case. The court first determined that the fees were a tax under *Hillis Homes.* Then it examined an exception to RCW 82.02.020 as a potential source of the requisite taxing authority. Finding that no such authority existed under the statute's exception for

dedications of land, RCW 58.17.110, the court found the tax unauthorized. *Ivy Club Investors,* at 531.

Similarly, in *San Telmo Assocs. v. Seattle,* 108 Wn.2d 20, 735 P.2d 673 (1987), the court began its analysis citing the general prohibition of RCW 82.02.020, but then stated that the central inquiry was whether the HPO was a tax, and applied the *Hillis Homes* test. Having determined the provisions at issue constituted a tax under *Hillis Homes,* the court concluded that "pursuant to RCW 82.02.020, [they] cannot be allowed." *San Telmo,* at 24. Under RCW 82.02-.020 an application of *Hillis Homes'* tax/regulation distinction is not necessary since regardless of whether a payment is characterized as a tax or a regulatory fee, it is prohibited unless specifically excepted.

Even though these cases have resisted a strict application of RCW 82.02.020 when confronted with the validity of a development fee, they do not reject such an application. In fact, the cases implicitly recognized the importance of the statute as a source of local government's authority to economically burden development, but gave the statute a narrow construction and limited application. However, in the light of the Legislature's clear intent as embodied in the statute's language, and the circumstances surrounding its enactment, we find that such a construction is not warranted, and will apply the statute according to its plain and unambiguous terms.

▌ Thus, we hold that SMC 22.210.100 (Section 10), which requires the payment of relocation assistance, violates RCW 82.02.020 as an indirect charge on development, and is therefore invalid on its face. We note that the notice and eviction protection provisions (Sections 8 and 9) are not severable, and must also fail, because they are so closely connected that one without the other would be useless to accomplish the purposes of the act. *Seattle v. State,* 103 Wn.2d 663, 677, 694 P.2d 641 (1985).

R/L next contends that this indirect charge on development constitutes a taking of private property in violation of article 1, section 16 of our state constitution and the fifth

and fourteenth amendments to the United States Constitution. We need not reach the taking issue in view of our main holding.

Next we address the contempt issue. In its order granting partial summary judgment and declaratory and injunctive relief, the trial court declared the tenant assistance provisions invalid and ordered relief, in part, as follows:

> 2. Plaintiffs are hereby awarded declaratory judgment that the tenant relocation assistance provisions codified in Sections 8, 9, and 10 of Seattle City Ordinance 112342 are invalid and may not be enforced against plaintiffs, their heirs, successors, or assigns.
> 3. Plaintiffs, their heirs, successors and assigns are hereby granted a permanent injunction prohibiting the City of Seattle from enforcing the tenant relocation provisions of the ordinance.

Clerk's Papers, at 189. Although the City appealed, it did not seek to stay the force or effect of the permanent injunction. Instead, the City continued to enforce the tenant assistance provisions found facially invalid by the trial court's order. In its judgment of contempt, the Superior Court found that the City had violated paragraph three of the trial court's order.

R/L argues that the trial court's permanent injunction prohibits the City from enforcing the tenant assistance provisions against anyone. Specifically, R/L argues that the injunction prohibits the City from enforcing the provisions against Fremont Dock, a corporation neither related in any way to R/L nor involved in this lawsuit against the City. The City argues that it is enjoined from enforcing the provisions only against R/L or its heirs, successors, and assigns.

■ Under former RCW 7.20.010, disobedience of any lawful judgment, order, or decree of the court constitutes contempt. In a contempt proceeding, an order will be enforced according to the plain meaning of its terms when read in light of the issues and purposes surrounding its entry. *Johnston v. Beneficial Mgt. Corp. of Am.,* 96 Wn.2d 708, 712–13, 638 P.2d 1201 (1982). For a comprehensive

discussion of contempt proceedings see *Keller v. Keller,* 52 Wn.2d 84, 88, 323 P.2d 231 (1958) and *Rainier Nat'l Bank v. McCracken,* 26 Wn. App. 498, 514, 615 P.2d 469 (1980).

■ By continuing to enforce the facially invalid tenant assistance provisions, the City disobeyed a lawful order of the court. Paragraph three clearly prohibits the City from enforcing the provisions. Its prohibition is not limited to enforcement only against R/L. If this were the case, paragraph two, which already prohibited enforcement of the provisions against R/L, would be meaningless. Moreover, the City's argument would lead to the absurd conclusion that it is free to enforce the provisions of a facially invalid ordinance against the citizens of Seattle until and unless each aggrieved party brings its own action challenging the ordinance. This would lead to multiple and unnecessary litigation upon an issue in which the City has clearly been denied authority to proceed.

The City observes that an injunction does not determine the rights and interests of persons who are not joined as parties. We agree. However, the City overlooks the fact that *it* is a party, and CR 65(d) provides that an order granting an injunction is binding *upon* the parties to the action and their officers and agents.

The City's decision to continue to enforce the HPO was deliberate. Two days after issuance of the injunction in this case, the City issued a news release that the city attorney had advised the Department of Construction and Land Use to continue to enforce the tenant relocation requirements. The release stated that the City had been enjoined from enforcing this provision in one case. The courts need not tolerate this intentional violation of a valid judgment that prohibited the City from enforcing those provisions.

The Superior Court's judgment of contempt is affirmed.

Because we hold the tenant assistance provisions invalid, R/L is entitled to a refund of the fees already paid to comply with the provisions. *Hillis Homes,* at 811.

R/L argues that it is additionally entitled to damages pursuant to 42 U.S.C. § 1983. It is clear that a municipality

may be subject to suit under 42 U.S.C. § 1983 where it acts through an ordinance. *Monell v. Department of Social Servs.*, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1977). To state a cause of action under section 1983, a plaintiff must show defendant acted under color of state law, thereby depriving plaintiff of a constitutionally protected right. *Brower v. Wells*, 103 Wn.2d 96, 105, 690 P.2d 1144 (1984).

■■ R/L is apparently arguing, and is supported in this argument by amicus Northwest Legal Foundation, that it has a constitutional right to substantive due process that was violated by the City's enforcement of the tenant assistance provisions of the HPO. Along with the vast majority of federal courts, we recognize that denial of a building permit, under certain circumstances, may give rise to a substantive due process claim. *See, e.g., Bateson v. Geisse*, 857 F.2d 1300 (9th Cir. 1988); *Littlefield v. Afton*, 785 F.2d 596 (8th Cir. 1986) (collecting and discussing federal cases). However, these cases make clear that a land use decision "denies substantive due process only if it is invidious or irrational." *Harding v. County of Door*, 870 F.2d 430, 431 (7th Cir. 1989) (citing *Coniston Corp. v. Hoffman Estates*, 844 F.2d 461 (7th Cir. 1988)).

While R/L pleaded a section 1983 claim, it made no allegation of irrational, or arbitrary or capricious conduct on the part of the City in its denial of R/L's demolition license. Moreover, this issue was not presented to or considered by the trial court, and will not be considered on appeal. *Robinson v. Peterson*, 87 Wn.2d 665, 675, 555 P.2d 1348 (1976). Thus, the trial court erred in awarding damages proximately caused by the City's enforcement of the provisions, since the City cannot be held liable in damages for the mere enforcement of an unconstitutional or void ordinance in the nature of a police regulation. *Simpson v. Whatcom*, 33 Wash. 392, 404, 74 P. 577 (1903); 57 Am. Jur. 2d *Municipal, County, School and State Tort Liability* § 208 (1988). *See Evangelical United Brethren Church v. State*, 67 Wn.2d 246, 407 P.2d 440 (1965).

Finally, R/L is entitled to attorney fees for defending an appeal of the trial court's contempt order. *Graves v. Duerden,* 51 Wn. App. 642, 651–52, 754 P.2d 1027 (1988); *Johnston v. Beneficial Mgt. Corp. of Am.,* 26 Wn. App. 671, 677, 614 P.2d 661 (1980), *rev'd on other grounds,* 96 Wn.2d 708, 638 P.2d 1201 (1982); RAP 18.1.

The trial court is affirmed in its finding the tenant assistance provisions invalid. The trial court is reversed to the extent it awarded damages proximately resulting from the enforcement of the ordinance. The matter is remanded for determination of an attorney fee for defending on appeal the contempt order.

CALLOW, C.J., and UTTER, DOLLIVER, DORE, PEARSON, ANDERSEN, DURHAM, and SMITH, JJ., concur.