[No. 26627-6-I.    Division One.    August 24, 1992.]

HENDERSON HOMES, INC., ET AL, *Respondents,* v. THE CITY OF BOTHELL, *Appellant.*

---

[5]*Presbytery of Seattle v. King Cy.*, 114 Wn.2d 320, 787 P.2d 907, *cert. denied,* 498 U.S. 911, 112 L. Ed. 2d 238, 111 S. Ct. 284 (1990).

*Wayne D. Tanaka, Phillip C. Raymond,* and *Ogden Murphy Wallace,* for appellant.

*Michael J. Murphy, Mark Erhart,* and *Davis Wright Tremaine,* for respondents.

BAKER, J. — This action was brought by respondent developers, Dujardin Development Company, Conner Development Company, and Henderson Homes, Inc., for a refund of money paid to the City of Bothell (Bothell) as park impact mitigation fees imposed as a condition of Bothell's approval of preliminary plats for three separate subdivisions proposed by the three developers. They allege that Bothell's assessment and expenditure of the park impact mitigation fees violated RCW 82.02.020.

Bothell contended below, *inter alia,* that the action was barred by the 30-day statute of limitations period established by RCW 58.17.180 for review of a municipal action approving or disapproving plats. The trial court ruled that the 30-day statute of limitations period did not apply to this action and that both Bothell's assessment and its expenditure of the park impact mitigation fees violated RCW 82.02.020. It concluded that Bothell did not have any ascertainable standards for evaluating the impact of proposed developments on the park system, that Bothell had failed to specifically identify any direct impact of respondents' developments on its park system, that the fee agreements were not executed voluntarily, and that the funds were not

properly expended as required by RCW 82.02.020. The trial court accordingly awarded judgment against Bothell in the amount of $106,000 plus prejudgment interest. We reverse.

In the course of negotiating with Bothell for preliminary plat approval, each of the developers[1] executed a mitigation agreement stating that the proposed developments would have a direct impact on the existing park system and agreeing to pay fees of $400 per dwelling unit at the time of final plat approval to mitigate that impact. The agreement recited that *the fee was in lieu of dedicating land* within the subdivision for the same purpose. Public hearings were held on each of the proposed developments before the planning commission and the city council. Bothell approved each of the preliminary plats conditioned on payment of the park impact mitigation fee.[2] The fees were paid, final plat approval was granted, building permits were issued, and the homes were constructed and sold.

# I
## ESTOPPEL

■ Bothell affirmatively asserts the defense of estoppel, the elements of which are: (1) an admission, statement or act inconsistent with a claim afterward asserted; (2) action by another in reliance upon that act; and (3) that the relying party would suffer injury if the party to be estopped were allowed to repudiate the earlier admission, statement or act. *PUD 1 v. Walbrook Ins. Co.*, 115 Wn.2d 339, 347, 797 P.2d 504 (1990).

---

[1]Dujardin Development Company and Henderson Homes, Inc., are successors in interest to Goldsmith & Associates, Inc., and Crown Capital Corp., respectively, the entities that initially entered into agreements with Bothell to obtain preliminary plat approval for their subdivisions. For simplicity's sake, the name of the successor will be used to include its predecessor.

[2]No evidence was presented that any of the developers challenged the park impact mitigation fee condition of approval before the planning commission or the city council. Dujardin Development Company, however, later paid the fee under protest. Preliminary plat approval was granted on the following dates: March 17, 1986 (Dujardin); January 16, 1984 (Conner); and May 11, 1987 (Henderson).

The developers first reply that Bothell failed to timely raise the defense, asserting it was raised for the first time in a motion to reconsider the trial court's judgment. We disagree. Bothell raised the defense in its answer to the complaint. Evidence presented at trial supports the estoppel theory. Thus, it was timely raised and may be considered here.

■ In reviewing Bothell's estoppel defense, we must consider the substantial economic benefit these developers received by approval of their plats and the construction and sale of the homes thereon. The fact that these developments have been completed and sold prevents Bothell from negotiating any solution to the park fee imposition issue other than refund. We cannot countenance allowing a developer to challenge plat approval conditions when the challenge is raised for the first time only after reaping the economic benefits secured by silent acceptance of those same conditions. *See Trimen Dev. Co. v. King Cy.*, 65 Wn. App. 692, 702, 829 P.2d 226 (1992). A developer may not enter into an agreement under RCW 82.02.020, obtain the benefit of it without any challenge to the municipality's right to condition plat approval on such agreement, and then assert its invalidity. These facts evoke estoppel in its most classic form.

The developers assert that Bothell may not rely on estoppel since it has "unclean hands". They point out that the trial court concluded the agreements were not executed voluntarily and the imposition of park fees was contrary to RCW 82.02.020.

We find no support in the record for the developers' charge that Bothell lacked clean hands in somehow forcing these fee-in-lieu agreements. The developers could have chosen instead to dedicate land, for example.

■ Furthermore, though the agreements may not comply with the requirement of RCW 82.02.020 that direct impacts of a particular development be identified, Bothell did have the fundamental authority under RCW 58.17.110 to require of these developers dedications of land or, under RCW 82.02-

.020, fees in lieu thereof. Thus, these were not wholly void assessments. *See Ivy Club Invs. Ltd. Partnership v. Kennewick,* 40 Wn. App. 524, 530-31, 699 P.2d 782 (taxing authority under RCW 82.02.020 concerns dedications of land or fees in lieu thereof under RCW 58.17.110), *review denied,* 104 Wn.2d 1006 (1985). Indeed, in many instances developers may prefer to sign agreements of this type rather than face the alternatives of either enduring the costs and delays inherent in an in-depth analysis of direct impacts or risking modifications to or rejection of plat applications due to unmitigated impacts. We do not imply that a developer may not elect to stand on its statutory rights and demand such an analysis. There is simply no violation of RCW 82.02.020 when both parties agree to forgo such a procedure in favor of agreeing on a less specific method of fee exaction and expenditure.

The developers herein signed agreements based on city ordinances, resolutions and staff reports stating that their proposed developments would have a direct impact on Bothell's park system and that the fees necessary to mitigate that impact were imposed in lieu of a dedication of land. Bothell relied upon these agreements in approving the preliminary plats, permitting the homes to be constructed, and planning the expenditure of the funds on park-related improvements. Bothell should not now be expected to refund those fees which have already been expended or allocated for improvements to its park system. We thus conclude that the developers' claims both as to fee imposition and expenditure are barred by estoppel.

## II
### STATUTE OF LIMITATIONS

We next address whether the 30-day limitation provided in RCW 58.17.180 for actions challenging the approval or disapproval of proposed plats applies to this action for recoupment of park mitigation fees imposed as a condition of plat approval. The answer to that question turns on the interplay

between RCW 58.17.110, RCW 58.17.180, and RCW 82.02-.020.

RCW 58.17.110 requires a municipality to inquire into the public use and interest that will be served by a proposed subdivision and to determine if appropriate provisions are made for, among other things, open spaces and parks. If the proposed plat does not make appropriate provisions, the municipality may deny the plat or require dedication of land to a public body as a condition of subdivision approval. RCW 58.17.180 provides for judicial review of decisions concerning plat approval:

> Any decision approving or disapproving any plat shall be reviewable for unlawful, arbitrary, capricious or corrupt action or nonaction by writ of review before the superior court of the county in which such matter is pending. . . .
>
> . . . .
>
> Application for a writ of review shall be made to the court within thirty days from any decision so to be reviewed.[3]

*See Northwest Land & Inv., Inc. v. Bellingham*, 31 Wn. App. 742, 644 P.2d 740 (1982).

RCW 82.02.020 preempts local taxation in certain areas and specifically provides that no city "shall impose any tax, fee, or charge, either direct or indirect, . . . on the development [or] subdivision . . . of land." The version of the statute in effect at the time these agreements were negotiated specifically exempts dedications of land pursuant to RCW 58.17-.110 from this overall state tax preemption statute.[4] RCW 82.02.020 further provides for voluntary agreements to allow payments in lieu of dedicating land or to mitigate a direct impact identified as a consequence of a proposed development, subdivision, or plat. RCW 82.02.020 itself makes no provision for review or appeal of these agreements.

---

[3]Section 16.36.020 of the Bothell Municipal Code parallels the language of RCW 58.17.180 and incorporates the 30-day appeal period.

[4]RCW 82.02.020 was amended in 1990 to delete the reference to RCW 58.17-.110. Laws of 1990, 1st Ex. Sess., ch. 17, § 42.

Respondent developers assert that the 3-year statute of limitations applicable to actions on unwritten contracts, RCW 4.16.080(3),[5] should apply to this action. They argue that the suit should be characterized as an action to recover void taxes on a theory of unjust enrichment, not as a challenge to approval of the plats or to the conditions of plat approval. The developers rely on *Hillis Homes, Inc. v. Snohomish Cy.*, 97 Wn.2d 804, 650 P.2d 193 (1982) and *Hart v. Clark Cy.*, 52 Wn. App. 113, 116, 758 P.2d 515 (1988) for this proposition.[6]

*Hillis Homes* considered the validity of park impact mitigation fees imposed before the 1982 amendments to RCW 82.02.020 which permitted agreements to pay fees in lieu of dedications of land. The court's analysis focused on whether the primary purpose of the fees was to regulate the use of land or to raise revenue. *Hillis Homes*, 97 Wn.2d at 809. Because no express grant of legislative authority to impose park fees existed at the time the fees were imposed, the court held that the park impact mitigation fees were an impermissible tax on development. *Hillis Homes*, 97 Wn.2d at 810.

*Hart* involved an action by developers seeking a refund of park impact mitigation fees paid under an ordinance invalidated by the holding in *Hillis Homes*. Because the action was filed more than 3 years after the fees were paid, the developers argued that the 6-year statute of limitations for actions on written contracts should apply. The County argued that the 3-year statute of limitations for unwritten contracts should apply. *Hart*, 52 Wn. App. at 114-15. The court's analy-

---

[5]RCW 4.16.080(3) provides:
"The following actions shall be commenced within three years:
". . . .
"(3) . . . an action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument[.]"

[6]The trial court also relied on *Hart* in concluding that the 30-day limit under RCW 58.17.180 did not apply to the action before it.

sis of this issue focused on whether the agreement was written or unwritten. Because it concluded that the agreement was unwritten, the court held that the 3-year statute of limitations applied. *Hart*, 52 Wn. App. at 115-16. The court expressly refused, however, to consider whether RCW 58.17-.180's 30-day statute of limitations applied because the question was not properly before it. *Hart*, 52 Wn. App. at 119. *Hart* thus does not resolve the question before us in this case.

Neither does the respondent developers' citation to the recent case of *Robinson v. Seattle*, 119 Wn.2d 34, 830 P.2d 318 (1992) assist them in their attempts to establish a 3-year statute of limitations. Relying on *Hart*, that case similarly held that a 3-year statute was applicable to refund actions for invalid taxes. However, the fees at issue have not been held to be an invalid tax. As we have held above, Bothell had fundamental authority to require land dedications or fees in lieu thereof. Thus, *Robinson* is not applicable here.

Respondent developers next suggest that it is significant to our analysis that RCW 58.17.180 does not incorporate RCW 82.02.020 "by its terms". However, RCW 58.17.180 predated RCW 82.02.020 by a number of years. We cannot place any significance on the Legislature's failure to amend the older statute when it enacted a new one. *See State v. Roth*, 78 Wn.2d 711, 715, 479 P.2d 55 (1971) (in enacting new statutes, the Legislature is presumed to have considered previous enactments). As noted in *Ivy Club Investors Ltd. Partnership v. Kennewick*, 40 Wn. App. at 530, the authority to charge a fee under RCW 82.02.020 is explicitly conditioned on the applicability of the plat statute, *i.e.*, RCW 58.17.110. It is the plat statute which provides the authority to require dedication of land for parks and open space in the first place. That authority is a condition precedent to RCW 82.02.020's provision permitting agreements to pay a fee in lieu of the dedication.

Where a statute provides no express mechanism for appeal but instead supplements existing authority, we have held that claims based on the supplemental statute are to

be brought in accordance with the statutory procedures for challenging the underlying governmental action. *South Hollywood Hills Citizens Ass'n v. King Cy.*, 33 Wn. App. 169, 173, 653 P.2d 1324 (1982) (challenge to a plat based on the State Environmental Policy Act of 1971 (SEPA), RCW 43.21C, must be brought within the 30-day appeal period of RCW 58.17.180), *rev'd on other grounds*, 101 Wn.2d 68, 78, 677 P.2d 114 (1984); *see also* cases cited therein. In *Hollywood Hills*, 33 Wn. App. at 173-74, we held:

> Here, RCW 58.17.180 and [the county code] provide specific mechanisms for review of the . . . preliminary plat decisions. Consequently, we hold that these enactments control the time within which all claims, including SEPA causes of action, must be brought.

Although *Hollywood Hills* did not address the interplay between RCW 82.02.020 and RCW 58.17.180, we believe that a similar analysis is appropriate here because RCW 82.02.020, like RCW 43.21C, supplements existing plat approval authority. When, as here, the condition being challenged is an integral part of the underlying governmental decision, law and logic dictate that it be challenged at the same time and on the same terms as the underlying action.[7]

■ The language of RCW 58.17.180 is not ambiguous: it states simply that *"[a]ny* decision approving or disapproving any plat shall be reviewable for unlawful, arbitrary, capricious or corrupt action or nonaction . . . within thirty days from any decision so to be reviewed." (Italics ours.) The language of Bothell Municipal Code 16.36.020, which parallels the language of RCW 58.17.180, is equally clear. Where a statute or ordinance is unambiguous, courts will give effect to the plain meaning of its language. *DiGiovanni v. Tukwila*, 54 Wn. App. 627, 630, 774 P.2d 1244 (1989), *review denied*, 114 Wn.2d 1001 (1990). Because the municipal action challenged here concerns a fee imposed *as a condition of plat*

---

[7]This policy has been specifically adopted by the Legislature in the context of SEPA appeals, RCW 43.21C.075(1), (2), (5), as this court previously stated in *Waterford Place Condominium Ass'n v. Seattle*, 58 Wn. App. 39, 46, 791 P.2d 908, *review denied*, 115 Wn.2d 1019 (1990).

*approval*, we are required to give effect to the plain meaning of the language of the applicable statute and ordinance requiring that an appeal from that, or any, plat condition be brought within 30 days.

Further, the 30-day limitation period is the only logical period to apply to any condition of plat approval. The fee requirement here is indistinguishable from plat conditions requiring drainage or roads, which depend on statutes and ordinances existing independent of the plat statute itself for authority to impose the condition. No logical reason exists to apply different limitation periods to different conditions. The result would be chaotic at best.

Substituting a 3-year limitation period for the 30-day period provided by RCW 58.17.180 would also prevent the rational, orderly planning of parks and other municipal services for which fee payments can lawfully be charged. Few municipalities could risk spending the funds received during the first 3 years of the 5-year statutory period within which they must be expended under RCW 82.02.020, unless they were prepared to refund those fees if a court later determined that the statute was violated. As a practical matter, 2 years is simply not enough time in which to plan for and construct municipal park improvements.

Finally, applying a 3-year limitation period to conditions of plat approval would directly contravene the policy favoring finality in land use decisions. *Deschenes v. King Cy.*, 83 Wn.2d 714, 717, 521 P.2d 1181 (1974). The statute of limitations at issue here exists for the benefit of all parties to land use decisions.

> The purpose of the 30-day limitation period of RCW 58.17-.180 is to give finality to actions on zoning matters. If there is no finality to the actions on zoning matters, no landowner would ever be safe in proceeding with the development of his property.

(Citation omitted.) *Veradale Vly. Citizens' Planning Comm. v. Board of Cy. Comm'rs*, 22 Wn. App. 229, 239, 588 P.2d 750 (1978).

■ For all of these reasons, we hold under RCW 58.17-.180 that claims alleging that park impact mitigation fees

are illegally imposed are barred unless challenged by writ of certiorari within 30 days of final plat approval in the same manner that all other conditions of plat approval must be challenged.

Furthermore, in this case a challenge to the manner of expending these funds should also have been raised within the 30-day limitation period. Here, the manner and purposes of expenditure of the funds was clearly set forth in the agreements entered into during the preliminary plat approval process. For example, each agreement stated that the fees collected would be used "for capital expenditures only which include, but are not limited to the acquisition of new park sites, improvement to these sites, or additions or improvements to existing facilities." The agreements further stated, pursuant to a city ordinance, that a certain percentage of the funds would be devoted to parks in the neighborhood of the development, in a neighborhood park within one-half mile of the project, or in the nearest community park; and that the remainder of the funds would be spent on the community park system serving the community at large.

The respondent developers do not argue that Bothell misled them or is expending the subject funds other than as agreed. Rather, they challenge Bothell's expenditures made *in compliance* with the agreements. Precisely the same challenges could and should have been raised within 30 days of preliminary plat approval.

If the method of expenditure called for in the agreements were being disregarded by Bothell, then Bothell would be in breach of those agreements, and a different statute of limitations would apply, although any such claims might still be subject to defenses such as equitable estoppel, waiver, or laches. Alternatively, if the agreements were silent as to the manner of expenditure, and a developer believed the expenditure method violated RCW 82.02.020, then Bothell might be subject to a claim brought within 3 years of the discovery of the alleged violation of RCW 82.02.020. Neither of these allegations is raised here, however.

We therefore conclude that the respondents' actions are barred by the doctrine of equitable estoppel and by the 30-day limitation period set forth in RCW 58.17.180.

Reversed.

FORREST, J., concurs.

AGID, J. (dissenting) — In holding that estoppel applies to bar an attack on or a refund of the fees paid to Bothell, the majority overlooks a number of significant facts and issues a license to municipalities to completely ignore the statutory prerequisites to imposing development fees. In addition, it distinguishes *Robinson v. Seattle*, 119 Wn.2d 34, 830 P.2d 318 (1992), on the ground that *Robinson* involved an invalid tax, whereas this case, it asserts, does not. Majority, at 204. To the contrary, in the absence of the statutory authority provided by RCW 82.02.020, Bothell has no authority to impose mitigation fees. Where, as here, a municipality fails to comply with any of the statutory requirements for imposing mitigation fees, the fees remain an invalid tax under the ruling in *Hillis Homes, Inc. v. Snohomish Cy.*, 97 Wn.2d 804, 808, 650 P.2d 193 (1982). Thus, the 3-year statute of limitations adopted in *Robinson*, RCW 4.16.080(3), would apply equally to this case. Because the majority opinion ignores the language of RCW 82.02.020 and frustrates the intent of the Legislature in enacting the statute, I dissent.

Whether the correct statute of limitations is 3 years or 30 days, the analysis and result are the same. Therefore, I will assume that the 30-day limitations period applies and that respondents Dujardin, Conner and Henderson Homes may not directly challenge Bothell's actions in imposing the park impact mitigation fees. Because RCW 82.02.020 limits the *expenditure* of mitigation fees to the specific purpose for which they were initially imposed, the first step is to review those actions to determine whether the fees were imposed in compliance with the statute.

If the fees were not imposed for a permissible purpose, the next step is to determine whether Bothell could cure that illegality in a manner which would enable it to comply with the expenditure provisions of RCW 82.02.020. If not, the final question is whether a refund is the proper remedy for violations of the statute.

## I
### IMPOSITION OF IMPACT MITIGATION FEES

RCW 82.02.020 provides in part:

> This section does not prohibit voluntary agreements with counties, cities, towns, or other municipal corporations that allow a payment in lieu of a dedication of land or to mitigate a direct impact that has been identified as a consequence of a proposed development, subdivision, or plat.

The trial court found that Bothell failed to conduct a site-specific analysis to determine the direct impact of any of respondents' developments on the park system, and that references to the impact of the developments on the park system in the documents prepared by Bothell were merely general and conclusory. Bothell does not challenge these findings, thus conceding that it did not identify any direct impacts of any of the developments. Unchallenged findings are verities on appeal. *Metropolitan Park Dist. v. Griffith*, 106 Wn.2d 425, 433, 723 P.2d 1093 (1986). In addition, Bothell conceded at oral argument that it never asked the developers to dedicate any land for park purposes. In making these concessions, Bothell admits that it has not complied with either of the conditions precedent to the imposition of fees under the statute: it has neither identified a direct impact that the statute would then permit it to impose and spend fees to mitigate, nor has it requested the dedication of any land for which a fee in lieu would be authorized.

The illegality of Bothell's assessment of these park impact mitigation fees is further demonstrated by the lack of any relationship between the fee-per-lot charge and the location,

value, configuration or impacts of any of the developments in question. If a fee is to be imposed in lieu of a dedication of land, the only rational, nonarbitrary way of determining the amount of the fee is to relate it to the value of the land which Bothell could require the developer to dedicate. If a fee is imposed to mitigate the impacts of a plat or other development, the only rational, nonarbitrary manner of determining the amount of the fee is to relate it to those identified impacts and to the specific measures Bothell may legally require developers to take to mitigate those impacts. To impose a flat fee of $400 per lot, regardless of the location of the proposed development in relation to existing or planned park facilities, the type of homes planned, the recreation facilities provided for within the plat, or the value of the land on which the development will be built, establishes that Bothell's method of assessing the fees is not impact specific as required by the statute.

In order to impose a park fee under RCW 82.02.020,[8] Bothell must have authority under some other statute either to require a dedication of land[9] or to require mitigation of "a direct impact that has been identified as a consequence of a proposed development, subdivision, or plat." RCW 82.02-.020.[10] The statute authorizing "voluntary agreements" does not, in and of itself, provide that authority. It is for this reason that Bothell's imposition of a flat $400-per-lot fee on these subdivisions, for which it has required no dedication of land or identified any development-specific impacts to be mitigated, is a clear violation of the plain and unambiguous language of RCW 82.02.020. The statute is not a fee statute

---

[8]Impact fees for numerous other municipal services may now be imposed directly pursuant to RCW 82.02.050-.090.

[9]This may be done, for example, under RCW 58.17.110(1), as amended, in order to assure that "appropriate provisions are made for . . . open spaces, . . . parks and recreation . . . ." Laws of 1990, 1st Ex. Sess., ch. 17, § 52.

[10]RCW 43.21C (State Environmental Policy Act of 1971) is an example of a grant of authority for mitigating the environmental impacts of a plat. The developer and the municipality may then agree, under the provisions of RCW 82.02.020, that a fee may be paid in lieu of constructing an improvement or taking other measures to mitigate that identified direct impact.

like RCW 82.02.050-.090. It is a fee-in-lieu statute.[11] It is fundamental that, in the absence of authority to require either a dedication of land or the mitigation of an identified impact, these fees are not "in lieu" of anything. The statute does not authorize or condone municipal developer exaction ordinances or schemes such as this.[12] None of the statutory prerequisites for imposing the fees was met here.

## II
### EXPENDITURE OF PARK MITIGATION FEES

With respect to the expenditure of the funds collected,[13] RCW 82.02.020 provides:

> (1) The payment shall be held in a reserve account and may *only* be expended to fund a capital improvement agreed upon by the parties to mitigate the identified, direct impact;
> (2) The payment shall be expended in all cases within five years of collection; and
> (3) Any payment not so expended shall be refunded . . ..

(Italics mine.) Each of the agreements with the developers here contained general language stating that the funds

---

[11]RCW 82.02.020 provides:

This section does not prohibit voluntary agreements with counties, cities, towns, or other municipal corporations that allow a *payment in lieu of a dedication* of land or *to mitigate a direct impact* that has been identified as a consequence of a proposed development, subdivision, or plat.

(Italics mine.) "In lieu of " means "in the place of : instead of ". *See Webster's Third New International Dictionary* 1306 (1971).

[12]While *R/L Assocs., Inc. v. Seattle*, 113 Wn.2d 402, 780 P.2d 838 (1989), makes it clear that we look to RCW 82.02.020 rather than *Hillis Homes* for the pertinent analytical framework, *Hillis Homes* continues to stand for the proposition that general fees cannot be imposed irrespective of the direct impacts of a development. 97 Wn.2d at 810. In this context, it is important to note that the scheme Bothell employs in assessing park impact mitigation fees is virtually identical to that invalidated in *Hillis Homes*.

[13]While there is some question of whether this issue was properly raised in the complaint, CR 15(b) provides in part:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

It is clear from the record and from the findings and conclusions entered by the court below that this issue was fully tried after it came to light in the course of pretrial discovery.

would be used for capital expenditures. However, because Bothell did not identify any direct impacts of these developments on its park system, there was and, indeed, could be no agreement between Bothell and these developers on capital improvements intended to mitigate an identified, direct impact. Since this is the only basis on which the funds may be expended, Bothell's expenditure of these funds violated RCW 82.02.020.

Because the 5-year period in which Bothell was to spend the funds had not yet expired at the time this action was brought, Bothell may argue that it is not yet precluded from entering into an appropriate agreement for expenditure of the funds with at least two of the three developers.[14] A party would not normally be expected to challenge an expenditure before it has taken place.[15] There are several reasons, however, why legally sufficient agreements governing the expenditure of the fees collected here are not possible under the facts of this case even if the 5-year expenditure period is tolled during the pendency of the lawsuit.

First, Bothell admits that it has already expended portions of the funds collected from each of these respondents on general park improvements and for non-capital improvement purposes within the city. Bothell cannot identify a single dollar in its "first in/first out" system of accounting for these and other park fees that was actually expended on any improvement that mitigated any direct impact of any of these developments. As the discussion above indicates, RCW 82.02.020 requires both identification of direct impacts and

---

[14] The fees were paid on the following dates: May 20, 1986 (Dujardin); June 30, 1987, and August 20, 1987 (Henderson); and May 18, 1987, and September 18, 1987 (Conner). The 5 years since Dujardin's payment expired on or about May 20, 1991; the others all expired in the summer of 1992.

[15] The majority apparently takes the position that an action challenging *expenditure* of the fees must, like a challenge to their imposition, be brought within 30 days of plat approval. Majority, at 207. This is clearly impossible because the fees will not have been spent so soon after approval of the plat.

agreement on capital improvements to mitigate those impacts at the time the fees are imposed. The statute is clear and unambiguous, and any other construction would allow a municipality to avoid the underlying purpose of the statute: to restrict fees to those instances where the development is responsible for impacts which must be mitigated under authority of law.

Second, in view of the trial court's unchallenged finding that no direct impacts were identified and Bothell's failure to identify any such impacts by the time this appeal was brought, there is no basis on which this court can conclude that the required impacts can be identified even at this late date. There is absolutely nothing in the record to show that there was in fact a direct impact on parks in the areas of the proposed developments which would have justified imposition of fees in the amount assessed.

Third, it is apparent that Bothell approached these funds as a general revenue source for funding park improvements and equipment throughout the city, and not as a method for "fund[ing] a capital improvement agreed upon by the parties to mitigate the identified, direct impact" of the projects on which the fees were imposed. RCW 82.02.020. As noted above, it is Bothell's actual practice to use the park impact mitigation fees it collects to pay for park-related costs throughout the city in a manner that is totally unrelated to the plat upon which they were imposed. The boiler-plate language in the reports and agreements approving and imposing conditions on these developments is virtually identical in all the reports and agreements for all the plats. There is no site-specific discussion of the park and recreation impact of any of these proposals. Rather, Bothell simply recites the same general language in every staff report and authorizing ordinance. Finally, it is unlikely that, given the posture of this litigation, any true agreement is a realistic possibility.

For all these reasons, Bothell cannot satisfy the requirement of RCW 82.02.020(1) that the funds collected can only

be expended "to fund a capital improvement agreed upon by the parties to mitigate the identified, direct impact." Thus, Bothell's expenditure of the park impact mitigation fees was unlawful.

## III
### REMEDY

The question remains whether Bothell's failure to comply with the expenditure requirements of RCW 82.02.020 mandates a refund. In determining the appropriate remedy, we look first to the plain language of the statute. After establishing the requirements and conditions that apply to the expenditure of funds, the statute provides:

> Any payment not *so* expended *shall be refunded* with interest at the rate applied to judgments to the property owners of record at the time of the refund . . ..

(Italics mine.) RCW 82.02.020(3). In order to give any meaning to the word "so" in this provision, it must be interpreted to incorporate the two requirements that immediately precede this paragraph; *i.e.*, that the funds be expended within 5 years and then only to fund an agreed-upon capital improvement which will mitigate an identified, direct impact.[16] Because Bothell failed to comply with these requirements, RCW 82.02.020 requires that the fees be refunded.

## IV
### ESTOPPEL

Finally, Bothell contends that the trial court erred in denying its motion for reconsideration in which it first briefed its estoppel argument. The majority agrees with Bothell that respondents are estopped from claiming that payment of park impact mitigation fees was not reasonably necessary because they signed agreements stating that the

---

[16]It is for this reason that the remedy suggested by Bothell — to order Bothell to appropriate funds to build capital improvements — is not available. The statute itself prescribes the only remedy for a violation. The legislative selection of an exclusive remedy, as set forth in RCW 82.02.020, distinguishes this case from *American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 802 P.2d 784 (1991), which held that, under *general* taxing statutes, taxpayers are not entitled to a refund when gambling tax funds are spent for purposes outside the statute.

fees were necessary and later built and sold the homes in their plats.

The majority's analysis notwithstanding, the required elements of estoppel are not met.

> Equitable estoppel is not favored, and the party asserting estoppel must prove each of its elements by clear, cogent, and convincing evidence. *Mercer v. State*, 48 Wn. App. 496, 500, 739 P.2d 703, *review denied*, 108 Wn.2d 1037 (1987).

*Robinson*, 119 Wn.2d at 82.

> [E]quitable estoppel requires a showing that the party to be estopped (1) made an admission, statement or act which was inconsistent with his later claim; (2) that the other party relied thereon; and (3) that the other party would suffer injury if the party to be estopped were allowed to contradict or repudiate his earlier admission, statement or act.

*PUD 1 v. Walbrook Ins. Co.*, 115 Wn.2d 339, 347, 797 P.2d 504 (1990). Nowhere in any of the agreements signed by respondents is there any language stating that Bothell may *expend* the funds for general capital improvements and park programs unrelated to respondents' developments. Bothell points us to nothing in the hearings, agreements, staff meetings or respondents' subsequent actions in developing their plats which could be so construed. Thus, the first element of equitable estoppel is not met. It follows a fortiori that, in the absence of an admission, statement or act by these respondents, there can be no reliance by Bothell. Although Bothell may be able to show an injury from having to refund the fee payments, it can establish only one of the three elements necessary to apply the doctrine of equitable estoppel to respondents' claim that Bothell has expended the fees charged for park purposes in violation of RCW 82.02.020.

Finally, it should be noted that, as a prerequisite to asserting equitable estoppel, the party seeking the benefits of the doctrine must be free from fault in the transaction at issue. "Appellant must, at a minimum, make a showing of blamelessness or reasonable conduct under the circumstances or [they are] without standing to assert estoppel as a defense." *Stohr v. Randle*, 81 Wn.2d 881, 884-85, 505 P.2d 1281 (1973) (quoting *Kozak v. Fairway Finance-Seattle, Inc.*,

60 Wn.2d 500, 504, 374 P.2d 1011 (1962)); *Puget Sound Bank v. Richardson*, 54 Wn. App. 295, 773 P.2d 429 (1989). As our Supreme Court recently described this "clean hands" doctrine,

> The doctrine of estoppel is for the protection of innocent persons, and only the innocent may invoke it. . . .
> A person may not base a claim of estoppel on conduct, omissions, or representations induced by his own conduct, concealment, or representations . . ..
> (Footnotes omitted.) 31 C.J.S. [*Estoppel* § 75,] at 453-54 [(1964)].

*Mutual of Enumclaw Ins. Co. v. Cox*, 110 Wn.2d 643, 651, 757 P.2d 499 (1988).

Bothell does not come to the court with clean hands in this transaction. It made acceptance of agreements to pay park fees of $400 per lot a condition of plat approval without complying with the requirements of RCW 82.02.020. Respondents had no choice but to execute those agreements in the form provided by Bothell. Had they refused, their plats would have been denied. By its own admission, Bothell has also expended the funds it collected from respondents in violation of the statute. Its own inequitable actions were the sole cause of this lawsuit. *See Del Guzzi Constr. Co. v. Global Northwest Ltd.*, 105 Wn.2d 878, 885, 719 P.2d 120 (1986). Having induced respondents to sign agreements which do not satisfy the statutory requirements as a quid pro quo for plat approval, and having ignored the expenditure requirements of RCW 82.02.020, Bothell is not now in a position to ask this court to use an equitable doctrine to rescue it from its own folly.

I would affirm the trial court.

Review granted at 120 Wn.2d 1018 (1993).