[No. 60790-7.   En Banc.   August 25, 1994.]

WASHINGTON MANUFACTURED HOUSING ASSOCIATION, ET AL, *Appellants*, v. PUBLIC UTILITY DISTRICT No. 3 OF MASON COUNTY, *Respondent*.

*Russell A. Austin, Jr.*, for appellants.

*Heuston, Settle & Johnson*, by *Benjamin H. Settle* and *Robert W. Johnson*, for respondent.

DOLLIVER, J. — Plaintiffs, a class of manufactured home owners and Washington Manufactured Housing Association, challenge the validity of resolution 817 adopted by Public Utility District No. 3 of Mason County (PUD). The resolution establishes a $2,000 new facility charge for utility hookup of all new electrically heated residential dwellings that do not meet the energy efficiency standards of the district's "Super Good Cents" program. Resolution 817 states that

> the District shall assess a New Facilities charge of $2,000 per unit where the unit does not meet the standards for qualifica-

tion of the District's Super Good Cents program. Such New Facilities charge shall be in addition to all charges or contributions that are required under the Districts Service Extension Policy. . . . This charge shall be utilized directly to mitigate potential rate increases to existing customers caused by growth in District loads[.] . . .

Resolution 817A clarifies that the $2,000 charge also applies to manufactured homes. In order to comply with the Super Good Cents program, the owner of a manufactured home can either make structural modifications or install a heat pump as provided in resolution 934.

The members of the plaintiff class own manufactured homes in Mason County and have paid the $2,000 new facility charge under resolution 817 instead of installing an energy efficient heat pump or modifying their homes to comply with the Super Good Cents standards. They claim resolution 817 is preempted because the efficiency measures required to avoid the $2,000 new facilities hookup charge are not part of the federal construction and safety requirements for manufactured homes. They also contend the resolution violates the supremacy and commerce clauses of the federal constitution as well as their civil rights.

The Plaintiffs brought a motion for summary judgment in which they sought recoupment of the facilities charge, a declaration that the resolution was invalid, and attorney fees and costs under 42 U.S.C. § 1988. The PUD responded by filing a cross motion for summary judgment. The trial court granted the PUD's motion and ordered dismissal of the Plaintiffs' claims. The Plaintiffs' motion for reconsideration was denied, and this appeal followed. We granted direct review, and we affirm the trial court's dismissal of the Plaintiffs' claims.

I

The National Manufactured Housing Construction and Safety Standards Act of 1974 establishes uniform standards for manufactured homes designed to improve their safety and durability. *See* 42 U.S.C. § 5401 *et seq.* The act also contains a preemption provision. 42 U.S.C. § 5403 provides:

**(d) Supremacy of Federal standards**

Whenever a Federal manufactured home construction and safety standard established under this chapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any manufactured home covered, any standard regarding the construction or safety applicable to the same aspect of performance of such manufactured home which is not identical to the Federal manufactured home construction and safety standard.

. . .

**(i) Manufactured housing construction and safety standards**

(1) The Federal manufactured home construction and safety standards established by the Secretary under this section shall include preemptive energy conservation standards in accordance with this subsection.

Plaintiffs contend the PUD's resolution is preempted under this provision. They argue that the PUD, as a municipal corporation created by RCW 54.04.020, is a political subdivision of the state. They further argue that the facilities charge contained in the resolution is a construction standard because it ultimately sets a higher energy efficiency standard owners of manufactured homes can avoid only by paying $2,000.

The PUD makes essentially two arguments. First, the PUD argues the preemption provision does not apply to an electric utility acting in its proprietary capacity, and that it only applies to a state (or political subdivision thereof) acting under its police powers. Second, the PUD argues that although it ties the $2,000 charge to compliance with energy efficiency standards, it is not creating and enforcing standards, but merely setting a reasonable rate. Because we agree the new facilities charge is a valid rate and not a construction standard, we do not address whether the preemption provision applies to proprietary acts.

It is undisputed the PUD has authority to establish rates for electrical service. RCW 54.16.040 states:

A district may [acquire and distribute electrical current] . . . with full and exclusive authority to sell and regulate and control the use, distribution, rates, service, charges, and price thereof . . ..

In *Hillis Homes, Inc. v. PUD 1*, 105 Wn.2d 288, 298, 714 P.2d 1163 (1986), we held that a public utility district has the authority to establish reasonable connection charges for new customers. We also held that such rates and charges are presumptively reasonable. *Hillis Homes*, 105 Wn.2d at 300. The Plaintiffs do not challenge the reasonableness of the $2,000 new facilities charge.

The record in this case reveals the $2,000 new facilities connection charge is designed to cover actual costs to be incurred by the PUD in providing the new inefficient residences with electrical power. The Plaintiffs do not challenge the PUD's assertion that the inefficient homes will cost more to service or the PUD's calculations of what those expenses will be. Instead they assert that the PUD, in establishing the new facilities connection charge, is actually enforcing a construction code. We note there are no cases directly on point, and the cases presented by the Plaintiffs as analogous do not convince us the PUD's rate classification based on energy efficiency is preempted.

It is clear state laws establishing stricter construction, safety, or energy standards are federally preempted. *See Liberty Homes, Inc. v. Department of Indus., Labor & Human Relations*, 125 Wis. 2d 492, 374 N.W.2d 142 (Ct. App. 1985) (federal law preempts state rule establishing indoor air formaldehyde levels for new manufactured homes); *MacMillan v. Redman Homes, Inc.*, 818 S.W.2d 87 (Tex. Ct. App. 1991) (federal law preempts state tort claim based on formaldehyde levels in manufactured home complying with federal standards). It is also clear that zoning laws that ban manufactured homes or limit them to certain areas are not preempted if they are silent as to construction or safety requirements. *See Gackler Land Co. v. Yankee Springs Township*, 427 Mich. 562, 398 N.W.2d 393 (1986); *Brookside Village v. Comeau*, 633 S.W.2d 790 (Tex.), *cert. denied*, 459 U.S. 1087 (1982). There is a distinction, however, between a general zoning ordinance which is not preempted and an ordinance banning placement of a manufactured home *based on* noncompliance with state safety standards which is preempted.

This distinction is discussed in *Scurlock v. Lynn Haven*, 858 F.2d 1521 (11th Cir. 1988). In *Scurlock*, the City of Lynn Haven allowed all manufactured homes in mobile home parks, but only state-approved manufactured homes in residentially zoned areas. The Scurlocks owned a residentially zoned lot where they wished to place their manufactured home, which met all federal regulations, but did not meet the state safety regulations. The Eleventh Circuit held that the City's zoning regulations were preempted and that the City could not condition mobile home zoning on compliance with state safety standards that were higher than the federal manufactured home standards. *Scurlock*, 858 F.2d at 1524. The court recognized the statute did not preempt local zoning authority, but stated the "City cannot attempt land use and planning through the guise of a safety provision in an ordinance when that safety requirement is preempted by federal law." *Scurlock*, 858 F.2d at 1525.

The Plaintiffs center their argument on this distinction, contending that the PUD is using its ratemaking authority to establish building codes that would otherwise be preempted. We disagree and find there is an important difference between imposing energy efficiency standards and incorporating the standards into a reasonable rate classification. It is well established that charging classes of customers different rates is proper as long as the classifications are reasonable. *Hillis Homes*, 105 Wn.2d at 300-01.

Unlike the ordinance in *Scurlock* the resolution in this case does not *mandate* compliance with standards higher than the federal standards. Furthermore, it is not a disguised attempt to regulate energy efficiency. Instead, it is an overt attempt to recover the additional costs of providing electricity to less efficient homes. As noted earlier, the $2,000 charge reflects the additional costs to be borne by the PUD in servicing the energy load created by inefficient new dwellings. The charge applies equally to all new facilities in the PUD area using an electric heat source, not just manufactured homes. The Plaintiffs are not prevented from placing their homes in the PUD area without meeting the stan-

dards, they are merely subject to a new facility connection charge to cover the cost of providing electrical service to their less efficient residences.

We hold the resolution is not preempted because it does not impose higher energy efficiency standards on manufactured homes, but rather creates a valid rate classification for all new residential utility users based on compliance with these standards.

## II

The Plaintiffs next contend the resolution violates the supremacy clause of the federal constitution. The general rule of the supremacy clause is that state enactments inconsistent with federal law must yield. In the area of manufactured homes, however, Congress has acted under the supremacy clause to expressly preempt state laws. *See* 42 U.S.C. § 5403. Thus, necessarily included in our determination above that the resolution is not preempted under the National Manufactured Housing Construction and Safety Standards Act of 1974 is the conclusion that the resolution does not violate the supremacy clause.

■ The Plaintiffs also contend the resolution violates the commerce clause. Under the commerce clause, the distinction between permissible and impermissible impact on interstate commerce involves a sensitive consideration of the weight and nature of the state regulatory concern in light of the burden imposed on interstate commerce. Where a regulation is evenhanded, effectuates a legitimate local purpose, and has only a minor impact on interstate commerce, it will be upheld unless the burden imposed is excessive in relation to the putative local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 25 L. Ed. 2d 174, 90 S. Ct. 844 (1970).

■ The PUD clearly has a legitimate interest in energy conservation. *See Tacoma v. Taxpayers*, 108 Wn.2d 679, 696-97, 743 P.2d 793 (1987). Furthermore, the resolution does not prohibit the sale of nonconforming homes, but rather it imposes additional charges for utility hookup. The burden on interstate commerce is incidental. *See Liberty Homes, Inc. v. Department of Indus., Labor & Human Relations, supra* at 510 (state statute imposing higher indoor air qual-

ity standards, though preempted, does not violate the commerce clause). The resolution challenged here does not violate the commerce clause.

## III

■ Finally, the Plaintiffs' claim includes an alleged civil rights violation. To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege (1) defendant acted under color of state law, and (2) that such conduct deprived the plaintiff of rights, privileges, and immunities protected by the Constitution of the United States. *Brower v. Wells*, 103 Wn.2d 96, 690 P.2d 1144 (1984); *R/L Assocs., Inc. v. Seattle*, 113 Wn.2d 402, 780 P.2d 838 (1989).

The Plaintiffs contend that by adopting resolution 817, the PUD has deprived them of the rights granted by Congress to purchase a manufactured home and use it as a home without imposition of any additional construction requirements. The Plaintiffs, however, fall short of linking this federal "right" to the federal constitution. Even if the Plaintiffs had asserted a violation of a constitutional right in their section 1983 claim, the only two alleged violations of the federal constitution in this case are violations of the supremacy clause and the commerce clause. A violation of the supremacy clause does not give rise to a section 1983 claim. *See Pirolo v. Clearwater*, 711 F.2d 1006, 1010-13 (11th Cir. 1983) (citing *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 615, 60 L. Ed. 2d 508, 99 S. Ct. 1905 (1979)). Furthermore, the alleged violation of the commerce clause is without merit, as noted above. Thus, the Plaintiffs' civil rights claim was properly dismissed.

The trial court's summary judgment dismissal of the Plaintiffs' claims is affirmed.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.