[No. 59416-8-I.   Division One.   July 7, 2008.]

Citizens' Alliance for Property Rights et al., *Appellants*, v. Ron Sims, *in his Official Capacity as King County Executive*, et al., *Respondents*.

---

650

*Brian T. Hodges* (of *Pacific Legal Foundation*) and *Sonya D. Jones* (of *Evergreen Freedom Foundation*), for appellants.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Darren E. Carnell* and *Stephen P. Hobbs, Deputies*, for respondents.

¶1 Cox, J. — The primary issue on appeal is whether King County Ordinance 15053, § 14 (King County Code (KCC) 16.82.150), which limits clearing on property zoned rural area residential (RA) to a maximum of 50 percent, depending on the size of the parcel, violates RCW 82.02-.020. The state statute generally prohibits counties from imposing "any tax, fee, or charge" on the development of land, subject to certain exceptions. The parties also address constitutional claims that we need not reach.

¶2 Because the clearing limitations of the ordinance fall within the scope of an in-kind, indirect "tax, fee, or charge" on development and King County (County) has failed in its burden to show that the limitations fall within any of the statutory exceptions, we reverse.[1]

---

[1] Futurewise, People for Puget Sound, Transportation Choices Coalition, Citizens for a Healthy Bay, Wild Fish Conservancy, and Sierra Club moved to modify

¶3 Washington adopted the Growth Management Act (GMA), chapter 36.70A RCW, in 1990.[2] King County enacted its Clearing and Grading Critical Areas Ordinance in 2004 pursuant to a GMA mandate that local jurisdictions adopt regulations to protect critical areas.[3] KCC 16.82.150, at issue here, limits the amount of land that may be cleared on a given parcel of property zoned as rural. Clearing limits vary depending on parcel size.[4] These limits may be modified by an approved farm management or rural stewardship plan.[5] The standards of this ordinance do not apply if more restrictive standards apply through other provisions of the KCC or through critical drainage area designations.[6] The Director of King County's Department of Development and Environmental Services[7] may modify or waive subsections of the ordinance, subject to conditions stated in the ordinance.[8]

¶4 In March 2005, Citizens' Alliance for Property Rights, a political action committee, and five individuals whose lands are subject to the ordinance (collectively CAPR) commenced this action against King County and others. They alleged that KCC 16.82.150 violates RCW 82.02.020. They also alleged that the ordinance violates substantive due process and other provisions of the Washington constitution.

---

the ruling of a commissioner of this court denying permission to submit an amici brief. We deny the motion to modify.

[2] LAWS OF 1990, 1st Ex. Sess., ch. 17.

[3] *See* RCW 36.70A.060(2) (requiring each county and city to adopt development regulations that protect critical areas), .030(5) (defining "critical areas"), .172(1) (requiring designation and protection of critical areas to be done in accordance with conclusions based on application of best available science); WAC 365-195-905, -910, -915, -920 (procedures relating to application of best available science). Further background regarding the relationship of the GMA and Ordinance 15053, § 14 (KCC 16.82.150) is found in *1000 Friends of Washington v. McFarland*, 159 Wn.2d 165, 183-85, 149 P.3d 616 (2006).

[4] KCC 16.82.150(A)(1)-(4), .152.

[5] KCC 16.82.154, .150(C)(1).

[6] KCC 16.82.150(B).

[7] KCC 16.82.020(H) (defining "director").

[8] KCC 16.82.150(D).

¶5 In its answer, King County raised the affirmative defense of lack of ripeness to the claim based on RCW 82.02.020. The County based its defense on the lack of any evidence that CAPR had first sought relief from the Growth Management Hearings Board to contest the scientific validity of the clearing limits of the ordinance.

¶6 CAPR moved to dismiss this affirmative defense, asserting that it neither pleaded nor would argue that King County failed to properly apply the best available science under the GMA. CAPR also asserted that it would not argue that the County failed to properly balance goals under the GMA.[9]

¶7 Based on these representations, the trial court granted CAPR's motion and dismissed King County's affirmative defenses relating to the statutory claim. The court also granted King County's summary judgment motion dismissing CAPR's substantive due process claim as unripe.

¶8 In late 2006, the parties made cross-motions for summary judgment on CAPR's RCW 82.02.020 claim. CAPR also moved to strike one of King County's declarations and all but one of its exhibits. It also sought a continuance pursuant to CR 56[10] to conduct discovery with respect to one expert. The court denied CAPR's motions to strike and continue. Thereafter, the court granted King County's cross-motion for partial summary judgment, dismissing CAPR's RCW 82.02.020 claim. The court entered final judgment in favor of King County.

¶9 CAPR appeals.

---

[9] Clerk's Papers at 1266.

[10] CR 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

## RCW 82.02.020

¶10 CAPR claims that the trial court erred in entering summary judgment in favor of King County and dismissing its claim. Specifically, CAPR argues that KCC 16.82.150 violates the limitations of RCW 82.02.020. We agree.

¶11 A motion for summary judgment may be granted when there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law.[11] We review a summary judgment order de novo, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party.[12]

¶12 An appellate court should normally refrain from deciding constitutional issues where alternate grounds for decision exist.[13] "RCW 82.02.020 generally provides, with some exceptions, that the state preempts the field of imposing certain taxes."[14] The statute states in relevant part:

> Except as provided in RCW 82.02.050 through 82.02.090, no county, city, town, or other municipal corporation shall impose any tax, fee, or charge, either direct or indirect, on . . . the development, subdivision, classification, or reclassification of land.[15]

¶13 There are exceptions to this general prohibition. RCW 82.02.020 "does not preclude dedications of land or easements within the proposed development or plat which the county, city, town, or other municipal corporation can demonstrate are reasonably necessary as a direct result of

---

[11] CR 56(c).

[12] *Khung Thi Lam v. Global Med. Sys.*, 127 Wn. App. 657, 661 n.4, 111 P.3d 1258 (2005).

[13] *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 752, 49 P.3d 867 (2002).

[14] *Id.* at 753 & n.8 (noting that the court interprets the statute according to its plain terms to include all charges without regard to whether the payment is a tax or not).

[15] RCW 82.02.020.

the proposed development or plat to which the dedication of land or easement is to apply."[16]

¶14 "RCW 82.02.020 requires strict compliance with its terms. A tax, fee, or charge, either direct or indirect, imposed on development is invalid unless it falls within one of the exceptions specified in the statute."[17]

¶15 The burden to prove that a condition is reasonably necessary as a direct result of the proposed development is on the governmental entity imposing the requirement.[18]

## *"Tax, Fee, or Charge"*

¶16 Threshold questions in this case are whether KCC 16.82.150 imposes a "tax, fee, or charge," which the state statute expressly prohibits, and, if so, whether the clearing limitations fall within one of the limited exceptions. CAPR claims the ordinance violates RCW 82.02.020. The County disagrees.

¶17 KCC 16.82.150 provides in relevant part as follows:

**Clearing standards for individual lots in the rural zone.**

A. Except as otherwise provided in this section, in the RA zone the following standards apply to clearing on individual lots:

1. For lots one and one-quarter acre or smaller:

a. clearing shall not exceed the greater of:

(1) the amount cleared before January 1, 2005, or cleared under a complete clearing permit application filed before October 25, 2004, in accordance with previous county regulations;

(2) fifty percent of the lot area; or

---

[16] *Id.*

[17] *Isla Verde*, 146 Wn.2d at 755 (citations omitted); *see also Henderson Homes, Inc. v. City of Bothell*, 124 Wn.2d 240, 247, 877 P.2d 176 (1994).

[18] *Isla Verde*, 146 Wn.2d at 755-56; *see also Trimen Dev. Co. v. King County*, 124 Wn.2d 261, 274, 877 P.2d 187 (1994) (citing *Dolan v. City of Tigard*, 512 U.S. 374, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994) (requiring "rough proportionality" between required dedication and impact of proposed development)).

(3) seven thousand square feet.

b. any clearing required for the construction of access, utilities and septic systems shall not be counted towards the amount of clearing allowed under this subsection;

2. For lots greater than one and one-quarter acres and up to fives [sic] acres in area, clearing shall not exceed the greater of:

a. the amount legally cleared before January 1, 2005, or cleared under a complete clearing permit application filed before October 25, 2004, in accordance with previous county regulations; or

b. fifty percent of lot area;

3. For lots greater than fives [sic] acres, clearing shall not exceed the greater of:

a. the amount legally cleared before January 1, 2005, or cleared under a complete clearing permit application filed before October 25, 2004, in accordance with previous county regulations;

b. two and one-half acres, or

c. thirty-five percent of lot area; and

4. For lots greater than one and one-quarter acre in either the Bear Creek basin, the Issaquah Creek basin and the May Creek basin, clearing shall not exceed the greater of:

a. the amount legally cleared before January 1, 2005, or cleared under a complete clearing permit application filed before October 25, 2004, in accordance with previous county regulations; or

b. thirty-five percent of lot area;

B. The standards in subsection A. of this section shall not apply if more restrictive standards apply through:

1. The Critical Areas Code, K.C.C. chapter 21A.24, and its adopted public rules;

2. Property-specific development standards or special district overlays under K.C.C. chapter 21A.38; or

3. Critical drainage area designations identified by adopted public rule.[19]

---

[19] KCC 16.82.150.

¶18 Additionally, subsection C provides that where a rural stewardship plan or farm management plan exists, that plan establishes the applicable clearing limits. It also exempts certain lots within a subdivision or short subdivision from the limits announced in subsection A (instead, KCC 16.82.152 applies to these lots). It permits a land owner to count most critical areas and buffers toward the requirements of subsection A. It further exempts areas such as public road easements, areas encumbered by a utility corridor, and relocated equestrian trails from the clearing limits. It also states that clearing standards for mining uses are governed by other provisions of the King County Code.[20]

¶19 Subsection D authorizes the Director to modify or waive the requirements of a subsection of KCC 16.82.150. The modification or waiver depends on where the site is located and whether a development proposes certain uses such as particular types of parks, libraries, government, and educational services.[21]

¶20 Here, the parties took the position below that there were no genuine issues of material fact for decision by the trial court.[22] Neither takes a different position on appeal, although there is a dispute centering on whether the trial court properly ruled on CAPR's motion below to strike certain evidence. However, in view of the fact that we are construing the plain language of the ordinance and applying the provisions of RCW 82.02.020, as construed by our courts, we conclude that there are no genuine issues of material fact for purposes of our review.

¶21 The question is whether under CR 56 the County was entitled to judgment as a matter of law. We conclude that it was not.

---

[20] KCC 16.82.150(C)(1)-(7).

[21] KCC 16.82.150(D).

[22] Clerk's Papers at 26 (Memorandum Decision Granting Defendant King County's Motion for Summary Judgment).

¶22  In *Isla Verde International Holdings, Inc. v. City of Camas*,[23] our supreme court considered whether a condition imposed for plat approval was a "tax, fee, or charge" on land.[24] There, Isla Verde, a developer, submitted a preliminary plat application for a proposed subdivision in the City of Camas. The Camas Planning Commission considered the application over the course of several meetings. The commission found that, due to the location and configuration of the proposed development, the developer would meet only 37 percent of the total required acreage required under the open space ordinance of the City. The remaining portion of the 30 percent requirement for open space was to be satisfied by a "buy down"—a payment partially in lieu of the set aside—which the ordinance permitted the Camas City Council to approve.

¶23  When the planning commission's recommendation came before the city council, objections to the open space set aside came with it. Ultimately, the city council required a full 30 percent open space set aside, with no buy down.[25]

¶24  Isla Verde petitioned for review of the City's decision under the Land Use Petition Act, chapter 36.70C RCW. The trial court held that the open space set aside violated RCW 82.02.020 because the City made no individualized determination that the 30 percent set aside requirement was necessary to mitigate an impact of the development, the condition was disproportionate to the impact caused by the subdivision, and the City had not established a need for additional open space within the city limits as a result of the proposed development.[26] The supreme court affirmed, holding that the open space set aside condition to plat

---

[23] 146 Wn.2d 740, 49 P.3d 867 (2002).

[24] *Id.* at 757.

[25] *Id.* at 749-50.

[26] *Id.* at 750.

approval was an "in kind indirect 'tax, fee, or charge' on new development."[27]

¶25 Here, the restrictions imposed by KCC 16-.82.150 are not materially distinguishable from those imposed by the Camas ordinance or by numerous other ordinances discussed in *Isla Verde*.[28] In fact, the ordinance here is very similar to the one at issue in *Trimen Development Co. v. King County*.[29] We note that the *Isla Verde* court cited *Trimen* for the proposition that the Camas ordinance was the type of requirement falling within the general prohibition of RCW 82.02.020.[30] The only difference in our case is that this ordinance has no provision for payment of a fee in lieu of imposing the restrictions on clearing. Rather, there are exceptions that' allow either more restrictive standards to apply or clearing limits to be set by approved rural stewardship or farm management plans. Notwithstanding these factual differences, we conclude that KCC

---

[27] *Id.* at 759.

[28] *See Vintage Constr. Co. v. City of Bothell*, 135 Wn.2d 833, 959 P.2d 1090 (1998) (RCW 82.02.020 applicable where ordinance required dedication of five percent of land for parks or payment of $400 per lot in lieu thereof); *Trimen*, 124 Wn.2d 261 (RCW 82.02.020 applicable to ordinance requiring developer to dedicate land for open space or recreation, or pay a fee in lieu thereof); *Henderson Homes*, 124 Wn.2d at 247-48 (RCW 82.02.020 applicable to ordinance requiring developer to pay a preset, per lot fee as a condition of plat approval); *San Telmo Assocs. v. City of Seattle*, 108 Wn.2d 20, 24, 735 P.2d 673 (1987) (requirements that owners of low income rental units provide relocation notice and assistance, and that owners replace a specified percentage of the low income housing with other suitable housing or contribute to low income housing replacement fund in lieu thereof when residential units are demolished or redeveloped to another use violated RCW 82.02.020 as indirect charge on development); *United Dev. Corp. v. City of Mill Creek*, 106 Wn. App. 681, 698, 26 P.3d 943 (RCW 82.02.020 applicable where city required developer to make frontage improvements for drainage along adjacent boulevard), *review denied*, 145 Wn.2d 1002 (2001); *Castle Homes & Dev., Inc. v. City of Brier*, 76 Wn. App. 95, 105-06, 882 P.2d 1172 (1994) (RCW 82.02.020 applicable to voluntary agreements assessing $3,000 per lot for traffic mitigation); *View Ridge Park Assocs. v. City of Mountlake Terrace*, 67 Wn. App. 588, 598, 839 P.2d 343 (1992) (RCW 82.02.020 applicable where ordinance required developer to construct on-site recreational facilities or pay a fee in lieu thereof).

[29] 124 Wn.2d 261, 877 P.2d 187 (1994).

[30] *Isla Verde*, 146 Wn.2d at 758-59.

16.82.150 imposes an in-kind, indirect "tax, fee, or charge" on development under RCW 82.02.020.

¶26 The County's arguments to the contrary are not convincing. First, the County argues that the clearing limits are development regulations that raise no revenue directly or indirectly and, as such, they do not constitute a "tax, fee, or charge."

¶27 Presumably the County relies on *Trimen* to support this argument. There, the court addressed a King County ordinance that conditioned subdivision approval upon a reservation or dedication of land for open space and recreation, or required payment of a fee in lieu thereof.[31] The amount of the land to be reserved or dedicated was determined by a formula that considered the gross land area of the subdivision and the zone of the area. Trimen, a developer, proposed a preliminary plat for property, which the County approved subject to reservation or dedication for open space to meet the requirements of the ordinance. Trimen challenged the condition, claiming that it violated RCW 82.02.020.

¶28 The *Trimen* court applied RCW 82.02.020 to the statute at issue. Although the court noted that the ordinance was not a "tax" because the primary purpose of the legislation was to regulate, it held that the imposition of park development fees was authorized by RCW 82.02.020.[32]

¶29 The plain words of the statute indicate that its application is not limited to "taxes." Furthermore, for purposes of RCW 82.02.020 a "tax, fee, or charge" can be in kind or in dollars.[33] Accordingly, our supreme court held in *Isla Verde* that an open space set aside condition substantially similar to the one at issue here was an in-kind, indirect "tax, fee, or charge" under RCW 82.02.020.[34]

---

[31] *Trimen*, 124 Wn.2d at 265.

[32] *Id.* at 270.

[33] *Isla Verde*, 146 Wn.2d at 758 (citing *San Telmo*, 108 Wn.2d at 24).

[34] *Id.* at 759.

¶30 Washington case law is clear that RCW 82.02.020 applies to ordinances that may require developers to set aside land as a condition of development.[35] Yet the County makes no attempt to address the numerous cases cited in *Isla Verde* that show how this ordinance falls within the scope of the phrase "tax, fee, or charge."

¶31 Next, the County argues that because it adopted the clearing limits pursuant to mandatory GMA requirements, the ordinance is not subject to RCW 82.02.020. The County argues that because the State is not bound by the requirements of RCW 82.02.020,[36] local jurisdictions are also not bound by the requirements of RCW 82.02.020 when they act on direct state authority. The County contends that the statute applies to local jurisdictions only when they act on their own initiative, without clear and direct state authority.

¶32 As further evidence that the County acts on direct state authority here, it argues that the GMA requires local jurisdictions to protect critical areas.[37] It also argues that state regulations specify what type of science must be used and the process to follow when developing such regulations.

¶33 But the clearing limitations of this ordinance are not required by the GMA. While the GMA directs local jurisdictions to take action to protect certain functions and critical areas, it does not direct the County to take the particular action of adopting this clearing limits ordinance.

¶34 Moreover, no Washington law supports the County's argument that KCC 16.82.150 is exempt from the requirements of RCW 82.02.020 because it was adopted in response to the State's GMA requirements. Nor is there authority for the proposition that a local jurisdiction is bound by the statute *only* when adopting an ordinance on its own initiative.

---

[35] *See id.* at 758.

[36] *See R/L Assocs., Inc. v. City of Seattle*, 113 Wn.2d 402, 407 n.2, 780 P.2d 838 (1989) (noting that RCW 82.02.020 would not prohibit the State from imposing the exaction at issue in the case).

[37] RCW 36.70A.030(5).

¶35 The County next argues that RCW 82-.02.020 does not apply where another statute authorizes the development condition. It argues that had the *Isla Verde* court found such an authorizing statute, it presumably would not have applied RCW 82.02.020 to the ordinance at issue there.[38] This argument is unsupported by a plain reading of *Isla Verde.*

¶36 Moreover, whether or not RCW 82.02.020 applies is not a question of whether another statute authorized the condition. RCW 82.02.020 does not confer authority on municipalities to impose conditions on development or charge fees in the absence of independent authority permitting the imposition of conditions for which the fee is a substitute.[39] It operates merely as "a prohibition on direct or indirect taxes, fees, or charges on development activity except that on-site dedications and easements which are permitted by other statutes are not prohibited by RCW 82.02.020."[40] While local governments have authority to adopt regulations and withhold plat approval if conditions for development have not been satisfied, Washington courts have allowed such conditions only where the purpose is to mitigate problems caused by particular development.[41]

¶37 In sum, we find unpersuasive all of the County's arguments that RCW 82.02.020 should not apply. This ordinance imposes clearing requirements that are an in-kind, indirect "tax, fee, or charge" on development.

---

[38] *See Isla Verde*, 146 Wn.2d at 763-64 (discussing whether RCW 58.17.110 or RCW 35A.63.100 authorize the city's open space set aside requirement and concluding they do not).

[39] *Cobb v. Snohomish County*, 64 Wn. App. 451, 462, 829 P.2d 169 (1991).

[40] *Id.*

[41] *Isla Verde*, 146 Wn.2d at 763-64; *see also Southwick, Inc. v. City of Lacey*, 58 Wn. App. 886, 893-94, 795 P.2d 712 (1990) (RCW 82.02.020 is not aimed at development-specific conditions but at "the imposition of the general social costs of development on developers.").

*Reasonably Necessary as a Direct Result of the Proposed Development*

¶38 The next and more difficult question is whether the County bore its burden to show that these clearing requirements fall within any exception stated in RCW 82.02.020. We conclude that the County has failed to do so.

¶39 The trial court concluded in its memorandum on the summary judgment motions that the County had evaluated the overall impacts of the effects of clearing in rural areas and satisfied the nexus requirement of RCW 82.02.020. However, the court made no mention of the rough proportionality requirement.[42] This was error.

¶40 RCW 82.02.020 mandates that a government imposing requirements such as the clearing limits here demonstrate that the restriction is " 'reasonably necessary *as a direct result of the proposed development or plat.*' "[43] Our supreme court has repeatedly held that this statute requires "that development conditions must be tied to a specific, identified impact of a development on a community."[44] The plain language of the statute does not permit conditions that are reasonably necessary for *all* development, or *any potential* development.[45] Rather, the statute specifically requires that a condition be "reasonably necessary as a direct result of *the proposed* development."[46]

¶41 *Isla Verde* is instructive on this question as well. Following the court's determination that the open space set aside required by the City was an in-kind, indirect "tax, fee, or charge" within RCW 82.02.020, it addressed whether the City bore its burden to show any exception applied.

---

[42] *See Dolan*, 512 U.S. at 391 (requiring "rough proportionality" between required dedication and impact of proposed development).

[43] *Isla Verde*, 146 Wn.2d at 761 (quoting RCW 82.02.020).

[44] *Id.*

[45] *See id.*

[46] RCW 82.02.020 (emphasis added).

¶42 First, the court rejected the City's attempt to justify the set aside requirement by its legislative determination of the need for the proposed subdivision to provide open space set asides to mitigate the consequences of subdivision development, generally.[47] In doing so, it distinguished *Trimen*.[48] The court stated that the comprehensive assessment of park needs conducted by the County in *Trimen* showed a deficit of park acres in the area of the proposed development.[49] The court also stated that the reservation or dedication of open space at the figure negotiated by the parties in *Trimen* would have resulted in an amount of park land that was roughly proportional to that which the report showed would be needed for the developments' estimated population.[50] The *Isla Verde* court ultimately held that the Camas condition, unlike that in *Trimen*, did not satisfy the statutory language of the exception: that the dedication is " 'reasonably necessary *as a direct result of the proposed development or plat.*' "[51] Thus, the condition could not be imposed.

¶43 Second, the court also observed that the open space condition to obtain plat approval was uniformly applied, in a preset amount, regardless of the specific needs created by a given development.[52] Such fees could not be applied automatically but must be tied to a direct impact of the proposed development.[53]

¶44 Here, the plain language of KCC 16.82.150 mandates a maximum amount of each lot that may be cleared, varying from 35 to 50 percent of the lot area. The variance depends on lot size. There is no persuasive claim that the

---

[47] *Isla Verde*, 146 Wn.2d at 760.

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.* at 761 (quoting RCW 82.02.020).

[52] *Id.* at 763.

[53] *Id.*; *Henderson Homes*, 124 Wn.2d at 247-48.

variation in clearing restrictions is proportionally related to proposed development, a necessary element to satisfy the statutory exception.

¶45 *Trimen* recognizes that proportionality is a necessary part of the analysis. Although *Trimen* suggests that a site-specific study is not required in order for a condition to comply with the statute, it also makes clear that the reason the ordinance at issue there satisfied the statute was because its requirement was reasonably necessary as a direct result of Trimen's development. We decline King County's invitation to construe *Trimen* to require only that "area studies," standing alone, satisfy RCW 82.02.020. The area studies must show that a connection exists between the impact of the proposed development and the ordinance requirement.

¶46 In *Trimen*, discussing the effect of the King County comprehensive assessment of park needs, the supreme court stated:

> We conclude therefore that the fees imposed in lieu of dedication were ***reasonably necessary as a direct result of Trimen's proposed development.***
>
> In *Henderson Homes*, Judge Agid cited Bothell's straight fee-per-lot charge as evidence that Bothell's assessment of park impact mitigation fees was made without any evaluation of the direct impact of the developments. On appeal, we concluded that Bothell in fact violated RCW 82.02.020.[54]

¶47 The specific passage of Judge Agid's dissent from this court's majority opinion in *Henderson Homes, Inc. v. City of Bothell*[55] to which the supreme court referred states:

> The illegality of Bothell's assessment of these park impact mitigation fees is further demonstrated by the lack of any relationship between the fee-per-lot charge and the location, value, configuration or impacts of any of the developments in

---

[54] *Trimen*, 124 Wn.2d at 274-75 (citations omitted) (emphasis added).

[55] 67 Wn. App. 196, 834 P.2d 1071 (1992), *rev'd*, 124 Wn.2d 240.

question. If a fee is to be imposed in lieu of a dedication of land, the only rational, nonarbitrary way of determining the amount of the fee is to relate it to the value of the land which Bothell could require the developer to dedicate. If a fee is imposed to mitigate the impacts of a plat or other development, the only rational, non-arbitrary manner of determining the amount of the fee is to relate it to those identified impacts and to the specific measures Bothell may legally require developers to take to mitigate those impacts. To impose a flat fee of $400 per lot, regardless of the location of the proposed development in relation to existing or planned park facilities, the type of homes planned, the recreation facilities provided for within the plat, or the value of the land on which the development will be built, establishes that Bothell's method of assessing the fees is not impact specific as required by the statute.[56]

The *Trimen* court distinguished its decision in *Henderson Homes Inc. v. City of Bothell*,[57] stating,

Contrary to Bothell's fee structure, King County's fee in lieu of dedication is calculated based on zoning, projected population, and the assessed value of the land that *would have been dedicated or reserved.* King County's assessment of fees in lieu of dedication **are specific to the site**, unlike the fee-per-lot charge assessed by Bothell.[58]

¶48 The failings of the ordinance before us are highlighted by the precise point made in *Trimen* and the dissent in this court's decision in *Henderson Homes*. KCC 16.82.150 imposes a uniform requirement for cleared area on each lot, unrelated to any evaluation of the demonstrated impact of proposed development. While the ordinance before us prescribes clearing limits in proportion to the size of the lot, it fails to relate the clearing limit to the nature and extent of the proposed development on the lot. Although KCC 16-.82.150 contains other criteria, none address the requirement that the clearing limits be impact specific, as the

---

[56] *Id.* at 209-10 (Agid, J., dissenting).

[57] 124 Wn.2d 240, 877 P.2d 176 (1994).

[58] *Trimen*, 124 Wn.2d at 275 (some emphasis added).

statute requires. Thus, the necessary proportionality that is required to fulfill the statutory exception is not satisfied.

¶49 The parties dispute whether King County has shown a nexus between the identified harm and the proposed solution. *Burton v. Clark County* states the applicable standard:

[T]he government must show that the development for which a permit is sought will create or exacerbate the identified public problem. This is the same as to say that there must be a relationship (nexus) between the development and the identified public problem; that the necessary relationship will exist if the development will create or exacerbate the identified problem; but that the necessary relationship will not exist if the development will not adversely impact the identified public problem. Thus, the *Nollan* [*v. California Coastal Commission*, 483 U.S. 825, 831, 107 S. Ct. 3141, 97 L. Ed. 2d 677 (1987)] Court rejected an easement that would have improved public access to the beach, even though the Commission's staff report said improved public access was needed, because the Nollans' project, replacing a bungalow with a new house, would not make the identified public problem, lack of public access, any worse than before. Similarly, the *Dolan* court rejected Tigard's exaction of a floodplain easement that would have enhanced the public's recreational opportunities, even though such opportunities were needed, because Dolan's project, a larger retail outlet, would not make the identified public problem, the public's lack of recreational opportunities, any worse than before. These holdings are consistent with the fundamental purpose of the Takings Clause, which is *not* to bar government from requiring a developer to deal with problems of the developer's own making, but which *is* "to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."[59]

¶50 Here, the trial court correctly determined that the record establishes the required nexus. As the trial court stated, the County has submitted a wealth of unchallenged

---

[59] *Burton v. Clark County*, 91 Wn. App. 505, 521-22, 958 P.2d 343 (1998) (footnotes omitted) (quoting *Dolan*, 512 U.S. at 384).

evidence that shows a nexus between excessive clearing and the proposed solution limiting clearing.

¶51 Nevertheless, RCW 82.02.020 requires both a nexus and rough proportionality for a dedication to fall within the exception. Because both are not present in this case, the ordinance violates the state statute.

¶52 The County attempts to distinguish *Isla Verde*. We are not persuaded by its arguments.

¶53 The County's primary argument is that unlike it, the City of Camas essentially had no justification and no legislative record explaining why it chose 30 percent as the set aside amount for every proposed subdivision. The County contends that its extensive review, analysis, and study justify the ordinance's requirements.

¶54 Similarly, the County argues that the ordinance in *Isla Verde* required a permanent land dedication, but KCC 16.82.150 does not. The County also argues that its exceptions for farming, agriculture, or rural stewardship set it apart from the mandatory set aside required by the City of Camas.

¶55 Regardless of these and other distinctions that the County makes between KCC 16.82.150 and the ordinance at issue in *Isla Verde*, its arguments are unavailing. Notwithstanding the County's extensive record, KCC 16.82.150 fails to satisfy the proportionality requirement of the statute. Thus, its ordinance, like the ordinance in *Isla Verde*, is invalid.

*Alternate Grounds to Affirm*

¶56 King County offers three alternate rationales to affirm the result below. We disagree with all of them.

¶57 King County urges this Court to affirm the result below because the intent and purpose of the clearing limits show it is not a "tax, fee, or charge." We have already rejected this argument earlier in this opinion.

¶58 The County next argues that RCW 82.02.020 does not apply to state-mandated GMA development regulations. We also rejected this argument earlier in this opinion.

¶59 Finally, King County contends that applying RCW 82.02.020 undermines the purposes and intent of the GMA, which manages growth and its associated impacts and benefits on a system-wide basis. The County argues that the GMA requires before-the-fact analysis and the adoption of system-wide rules. In contrast, CAPR argues that RCW 82.02.020 requires evaluation of the reasonable necessity of the clearing limits only after a site-specific development proposal has been submitted by a landowner.

¶60 King County urges us to harmonize the state statute with its ordinance by recognizing that local jurisdictions satisfy the state statute when they adopt development regulations after completing an "appropriate review process."[60] As earlier discussed, we read *Trimen* to require more than comprehensive area studies to justify such conditions. A condition must relate to the impact of the proposed development to satisfy the statute.

¶61 Moreover, a decision to "harmonize" these statutes by ignoring the plain language of RCW 82.02.020 is untenable. If the state legislature had intended such a reading when it passed the GMA, it would have said so. It did not.

## SUBSTANTIVE DUE PROCESS

¶62 CAPR argues that the trial court erred in dismissing its facial substantive due process challenge as unripe. Because we have resolved the challenge to KCC 16.82.150 on a nonconstitutional basis, we need not consider the facial challenge to the ordinance on substantive due process grounds.[61]

---

[60] *See Trimen*, 124 Wn.2d at 274-75; Br. of Resp't at 33.

[61] *See Isla Verde*, 146 Wn.2d at 752.

## SUMMARY

¶63 To summarize, the clearing limitations of KCC 16.82.150 constitute an in-kind, indirect "tax, fee, or charge" on new development. King County has failed in its burden to show that the ordinance falls within any exception to the imposition of those limitations to development. Accordingly, we hold that the ordinance must give way to the state statute.

¶64 King County has failed to demonstrate any other reason for the ordinance to stand. CAPR has demonstrated its invalidity as a matter of law. Accordingly, CAPR is entitled to judgment as a matter of law.

¶65 We reverse the summary judgment in favor of King County and remand with directions for entry of summary judgment in favor of CAPR.

¶66 The remaining issues in this opinion are not of precedential importance. Accordingly, the remainder of this opinion is not published.[62]

AGID and ELLINGTON, JJ., concur.

Review denied at 165 Wn.2d 1030 (2009).