230 P.3d 1074 (2010)
CITIZENS FOR RATIONAL SHORELINE PLANNING, a Washington Nonprofit Corporation, and Ronald T. Jepson, an individual, Appellants, and
Building Industry Ass'n of Whatcom County, Intervenor-Plaintiff,
v.
WHATCOM COUNTY, a municipal corporation of the State of Washington, the Whatcom County Council, and the State of Washington, Department of Ecology, Respondents.
No. 63646-4-I.
Court of Appeals of Washington, Division 1.
May 10, 2010.
*1075 Peter Buck, The Buck Law Group, Matthew Stock, Skellenger Bender, Seattle, WA, for Appellants.
Charles Klinge, Samuel Rodabough, Groeen Stephens & Klinge LLP, Bellevue, WA, for Building Industry Association of WA.
Kelly Wood, Katharine Shirey, Olympia, WA, for WA State Department of Ecology.
Karen Frakes, Whatcom Co. Pros. Ofc., Royce Scott Buckingham, Whatcom County Prosc. Atty. Ofc., Bellingham, WA, for Whatcom County & Whatcom County Council.
DWYER, C.J.
¶ 1 At issue in this appeal from the superior court's CR 12(b)(6) order of dismissal is whether shoreline master programs (SMPs), developed pursuant to the Shoreline Management Act of 1971, chapter 90.58 RCW, are subject to RCW 82.02.020, which prohibits local governments from imposing direct or indirect taxes, fees, or charges on development. Because of the pervasive and necessary involvement of the state, through the Department of Ecology, in the development, review, and approval of SMPs, the superior court correctly ruled that RCW 82.02.020's prohibitions do not apply to these regulations. Accordingly, we affirm.

I
¶ 2 Whatcom County began amending its SMP in 2004, as required by the Shoreline Management Act. RCW 90.58.080(2)(a)(i). The county submitted its proposed SMP revisions to the Department of Ecology for review and approval. Ecology provided the county with 13 pages of mandatory revisions to the proposed SMP and two pages of recommended changes. Whatcom County accepted the changes and, on August 8, 2008, Ecology notified the county that it had approved the proposed SMP as modified. Ecology's final approval made Whatcom County's SMP effective.
¶ 3 Citizens for Rational Shoreline Planning (CRSP) then sued Whatcom County alleging, among other things, that several provisions in the newly-adopted SMP violated *1076 RCW 82.02.020. Ecology was allowed to intervene as a defendant.[1]
¶ 4 In particular, two of the SMP's final provisions are at issue in this lawsuit. First, the buffer zone provisions applicable to shoreline lots are the same as those set forth in the Whatcom County Critical Areas Ordinance, chapter 16.16 Whatcom County Code (WCC), in effect at the time the SMP was adopted. Whatcom County Ordinance 2007-017, § 23.90.13.B; WCC 23.90.13.C (SMP Table). Whatcom County's critical areas ordinance imposes buffer zones of 150 feet from shoreline streams, WCC 16.16.740(B), 150 feet from the marine shore, WCC 16.16.740(C), 100 feet from lakes of over 20 acres, WCC 16.16.740(C), and between 25 to 300 feet from wetlands, WCC 16.16.630. Second, the SMP limits the buildable area of non-conforming lots to not more than 2,500 square feet. WCC 23.50.07(K)(2).
¶ 5 Ecology and Whatcom County moved to dismiss, pursuant to CR 12(b)(6), CRSP's claim alleging that the SMP violated RCW 82.02.020. The basis for this motion was the contention that CRSP failed to state a claim because the SMP was a product of state regulatory action, to which RCW 82.02.020 does not apply. The trial court granted the motion to dismiss. CRSP moved for reconsideration, which the trial court denied. In so ruling, the trial court stated that there was a "pervasive level of state involvement in and control over the entire SMP process."
¶ 6 CRSP appeals.

II
¶ 7 As this appeal is from an order of dismissal entered pursuant to CR 12(b)(6) and concerns a pure question of law, we review de novo the trial court's decision. Rodriguez v. Loudeye Corp., 144 Wash.App. 709, 717, 189 P.3d 168 (2008).

III
¶ 8 CRSP contends that Whatcom County's SMP provisions requiring various buffers from shorelines and restricting the building area of non-conforming lots to no more than 2,500 square feet are indirect taxes, fees, or charges imposed on development by a local government and, as such, are prohibited by RCW 82.02.020. We disagree.
¶ 9 RCW 82.02.020 prohibits municipalities from imposing direct or indirect taxes, fees, or charges on development.[2] This statutory prohibition is not limited to the extraction of monetary payments. See, e.g., Isla Verde Int'l Holdings, Inc. v. City of Camas, 146 Wash.2d 740, 49 P.3d 867 (2002) (30 percent of land set aside for open space); Trimen Dev. Co. v. King County, 124 Wash.2d 261, 877 P.2d 187 (1994) (dedication or reservation of land for recreation); Citizens' Alliance for Prop. Rights v. Sims, 145 Wash.App. 649, 187 P.3d 786 (2008) (prohibition on clearing more than 35 to 50 percent of property). The statutory prohibition is intended "`to stop the imposition of general social costs on developers, while at the same time allowing the continued imposition of costs that are directly attributable to the development.'" Isla Verde, 146 Wash.2d at 760 n. 14, 49 P.3d 867 (quoting Southwick, Inc. v. City of Lacey, 58 Wash.App. 886, 893-94, 795 P.2d 712 (1990)). By its plain terms, the statute does not apply to actions taken by the state government. Humbert v. Walla Walla County, 145 Wash.App. 185, 193, 185 P.3d 660 (2008) ("[RCW 82.02.020] by its terms speaks only to the local political subdivisions of the state.").
*1077 ¶ 10 The Shoreline Management Act (SMA) was enacted in 1971 to facilitate protection of our state's shorelines.[3] All development on the shorelines of this state must be conducted in conformance with the SMA. Buechel v. Dep't of Ecology, 125 Wash.2d 196, 203, 884 P.2d 910 (1994). In enacting the SMA, the legislature recognized that "the shorelines of the state are among the most valuable and fragile of its natural resources" and that "ever increasing pressures of additional uses are being placed on the shorelines necessitating increased coordination in the management and development of the shorelines of the state." RCW 90.58.020. Accordingly, "[t]he SMA is to be broadly construed in order to protect the state shorelines as fully as possible." Buechel, 125 Wash.2d at 203, 884 P.2d 910.
¶ 11 The SMA requires that shoreline management and planning of development near shorelines be coordinated between the state government and local governments. RCW 90.58.020, .050. The SMA delineates particular elements and specific provisions that local governments and Ecology must include within SMPs. See, e.g., RCW 90.58.100(2) (listing elements that shall be included within SMPs), .100(5) (requiring SMPs to contain provisions for conditional use permits and variances), .100(6) (requiring SMPs to contain standards for protecting single family residences), .150 (selected timber harvesting), .320 (height limitation). Although the SMA directs each local government to develop and administer its SMP, the state has an extensive, statutorily-mandated role in the development and administration of SMPs.
¶ 12 Most significantly, a SMP becomes effective only upon approval by Ecology. RCW 90.58.090(1). Moreover, Ecology is to approve a SMP only if it determines the SMP to be consistent with both the SMA and certain guidelines developed by Ecology. RCW 90.58.090(3)-(5). In the event that a local government declines, refuses, or fails to develop an adequate SMP, Ecology is authorized to develop and impose a SMP in the local government's stead. RCW 90.58.070(2),.090(5). All SMPs approved or adopted by Ecology become elements of the official state master program, RCW 90.58.030(3)(c), which "constitute[s] use regulations for the various shorelines of the state." RCW 90.58.100(1).
¶ 13 Ecology's statutorily-mandated involvement in the process of SMP development is considerable and, ultimately, determinative. Among other responsibilities, Ecology (1) develops guidelines that provide criteria for developing master programs, RCW 90.58.030(3)(a); (2) reviews, revises, and approves SMPs, RCW 90.58.090; (3) administers certain types of development along the shorelines, RCW 90.58.140(10); and (4) enforces the SMA and SMP use regulations against the federal government, RCW 90.58.260.

IV
¶ 14 Our Supreme Court has previously recognized the pervasive level of state control over and involvement in the development of SMPs. In Orion Corporation v. State, 109 Wash.2d 621, 747 P.2d 1062 (1987), the court held that only the state, and not the county, was responsible for any unconstitutional takings arising out of the adoption of Skagit County's SMP regulations. 109 Wash.2d at 643, 747 P.2d 1062. This was so, the court ruled, because the county was acting as an agent of the state in developing the SMP. Orion, 109 Wash.2d at 643-44, 747 P.2d 1062. Indeed, the court noted that "the County acted at the instance of and, in some material degree, under the direction and control of the State." Orion, 109 Wash.2d at 644, 747 P.2d 1062. In so holding, the court emphasized that the county's actions were directed and controlled by the state in that the SMA and Ecology's guidelines required the county to include certain provisions in the SMP and that the SMP became effective only when adopted or approved by Ecology. Orion, 109 Wash.2d at 643, 747 P.2d 1062.
¶ 15 CRSP, however, contends that Orion and other decisions recognizing that SMPs are state regulations, including Buechel, 125 Wash.2d 196, 884 P.2d 910, and Harvey v. Board of Commissioners of San Juan County, 90 Wash.2d 473, 584 P.2d 391 (1978), were *1078 effectively invalidated in 1995 by legislative amendments made to the Growth Management Act (GMA), chapter 36.70A RCW. We disagree.
¶ 16 The cited amendments were proposed in order to consolidate and integrate the GMA, the SMA, the State Environmental Policy Act,[4] and other environmental laws so as to "simplify[] rules and regulations in the state." FINAL B. REPORT on Engrossed Substitute H.B. 1724, at 1, 54th Leg., Reg. Sess. (Wash. 1995). One aspect of these amendments revised the process by which Ecology approves SMPs developed by local governments, allowing Ecology to administratively approve such SMPs, rather than requiring Ecology to adopt them by formal rulemaking. Laws of 1995, ch. 347, § 311. However, there is no evidence that, by adopting these provisions, the legislature intended to alter the level of state involvement in the development of SMPs. While the locally-developed and Ecology-approved SMPs are no longer published in the Washington Administrative Code as a formal rule, this fact does not alter the status of the SMPs as the product of state regulation. Ecology must still approve proposed SMPs in order for them to become effective and must still follow specific SMA procedures in so doing. Moreover, all approved SMPs continue to become part of the state master program, constituting the use regulations for the state. RCW 90.58.030(3)(c), .100(1); see also Buechel, 125 Wash.2d at 203-04, 884 P.2d 910 ("The total of all approved shoreline management master programs constitute Washington State's Shoreline Management Master Program."). The Supreme Court's decision in Orion remains authoritative.
¶ 17 Recent developments support this conclusion. In 2007, our Supreme Court issued a decision concerning Bainbridge Island's moratoria on shoreline development. Biggers v. City of Bainbridge Island, 162 Wash.2d 683, 169 P.3d 14 (2007), superseded by statute Laws of 2009, ch. 444 (codified at RCW 90.58.590). Although the court was divided on the question of whether the SMA precluded such moratoria, resulting in the publication of three opinions (none representing the views of a majority of the justices), the court was unanimous in its agreement that the SMA continued to be properly viewed as a statutory scheme providing for coordinated authority between the state and local government, with the state reserving ultimate control unto itself.
¶ 18 Thus, in its lead opinion, the court explained, "Under the SMA, the State has the primary authority to manage shoreline development. This is done in a coordinated fashion, in conjunction with local governments." Biggers, 162 Wash.2d at 687, 169 P.3d 14 (J.M. Johnson, J., plurality opinion). The basis for the primacy of the state's control, in Justice Johnson's view, lies in the state constitution.
Article XVII, section 1 of the Washington Constitution declares that shorelines were originally owned by the State, and therefore subject to State regulation. Even after sale or lease of shorelines, the State continues to hold remaining sovereign interests of the public. Indeed, the SMA was expressly based on the proposition that shorelines are of "statewide significance." Local governments do not possess any inherent constitutional police power over state shoreline use.
Biggers, 162 Wash.2d at 694, 169 P.3d 14 (J.M. Johnson, J., plurality opinion).
¶ 19 The state maintains its primacy, Justice Johnson further explains, because "the interests of all Washington residents in these shorelines cannot be impliedly abdicated to local government." Biggers, 162 Wash.2d at 696, 169 P.3d 14 (J.M. Johnson, J., plurality opinion). Thus, the SMA "delegate[s] only specified powers to local governments." Biggers, 162 Wash.2d at 697, 169 P.3d 14 (J.M. Johnson, J., plurality opinion).
¶ 20 Similarly, the concurring opinion acknowledged that "the State has chosen to share its power to regulate [shore lands] with its municipalities through the mandates and guidelines of the SMA." Biggers, 162 Wash.2d at 705, 169 P.3d 14 (Chambers, J., concurring opinion). Even the dissenting opinion reiterated the pervasive nature of state involvement under the SMA, noting *1079 "that state and local governments share authority for developing shoreline regulations under the SMA." Biggers, 162 Wash.2d at 713, 169 P.3d 14 (Fairhurst, J., dissenting opinion). Thus, all Justices joined opinions expressing views similar to those expressed in Orion.
¶ 21 The purpose of RCW 82.02.020 is to prevent local governments from imposing the general societal costs of development on developers. Isla Verde, 146 Wash.2d at 760 n. 14, 49 P.3d 867 (quoting Southwick, Inc., 58 Wash.App. at 893-94, 795 P.2d 712). It is not effective against the state. The state's significant involvement in the development of SMPs, as demonstrated by the statutory scheme discussed above and as recognized by our Supreme Court in Orion and Biggers, indicates that the trial court was correct in ruling that RCW 82.02.020 does not apply to regulations contained within SMPs.

V
¶ 22 Nevertheless, CRSP asserts that because local governments are afforded deference by Ecology in the development of many SMP provisions, the SMPs must fall within the purview of RCW 82.02.020. Again, we disagree. In actuality, the amount of deference conferred by Ecology is that amount which good management, intergovernmental civility, and political considerations dictate. The SMA and Ecology's guidelines do not mandate any particular degree of deference. In fact, the opposite is true. Local governments are obligated to develop a SMP and submit it for Ecology's approval. RCW 90.58.070, .080. If the local government does not discharge this obligation, Ecology is empowered to unilaterally develop and impose a SMP on that jurisdiction. RCW 90.58.070(2),.090(5). Such a heavy-handed statutory authorization is the opposite of legislatively-mandated deference.

VI
¶ 23 CRSP proposes several additional contentions as to why Whatcom County's SMP should be found to be a local regulation subject to RCW 82.02.020. These can be summarized as follows: (1) the 1995 amendments, by defining GMA development regulations to include SMP regulations, caused SMPs to become subject to RCW 82.02.020; (2) one of Ecology's regulations references chapter 82.02 RCW, thereby effectively imposing RCW 82.02.020's prohibitions on SMPs; (3) SMPs adopted pursuant to the SMA are not exempt from RCW 82.02.020's prohibitions because of our decision in Sims; and (4) at the very least Whatcom County's SMP contains some provisions that are purely local regulations that should, on that basis, be subject to RCW 82.02.020. We have reviewed each of these contentions and determined that none has merit.
¶ 24 First, CRSP contends that the 1995 amendments caused SMPs to become subject to RCW 82.02.020. CRSP reasons that this is so because the 1995 amendments incorporated SMP regulations as part of a local government's GMA development regulations. Laws of 1995, ch. 347, § 104; RCW 36.70A.030(7), .480. However, these amendments did not alter the pervasive level of state control over and involvement in the development of SMPs. Thus, these amendments did not bring SMPs within the ambit of RCW 82.02.020.
¶ 25 Second, CRSP argues that Ecology's own regulations establish that RCW 82.02.020 applies to SMPs because WAC 173-26-186 mentions chapter 82.02 RCW.[5] However, Ecology's regulation does not make RCW 82.02.020 applicable where it would not otherwise apply, nor could it do so. "It is well settled that administrative rules cannot amend or change legislative enactments." Kabbae v. Dep't of Soc. & Health *1080 Servs., 144 Wash.App. 432, 443, 192 P.3d 903 (2008); see also Kitsap-Mason Dairymen's Ass'n v. Wash. State Tax Comm'n, 77 Wash.2d 812, 815, 467 P.2d 312 (1970) ("Rules must be written within the framework and policy of the applicable statutes."). It is the intent of the legislature, not the executive branch, that is at issue in resolving the dispute herein.
¶ 26 Third, CRSP asserts that our decision in Sims establishes that RCW 82.02.020 applies to a local government's actions even when the local government is promulgating an ordinance in direct response to state law requirements. But the holding in Sims is inapplicable to the circumstances herein, given that the legislature created considerably different structures within the GMA and the SMA. The plurality opinion in Biggers describes the differences:
The process for adopting SMPs is different from the process for adopting GMA comprehensive plans and regulations. The SMA did not vest planning authority exclusively in local government, as did the GMA. Instead, the SMA provides for state checks and balances on local authority, including the requirement that the Department of Ecology approve all local shoreline master plans before they become effective.
162 Wash.2d at 701, 169 P.3d 14 (J.M. Johnson, J., lead opinion) (citing RCW 90.58.090(1)). King County's adoption of the clearing limits challenged in Sims was solely a local government action, distinct from the circumstances herein where the county's adoption of its SMP was contingent upon obtaining approval from the state.
¶ 27 Finally, CRSP avers that, even if we conclude that RCW 82.02.020 does not apply to SMPs because of the state's involvement, we should nevertheless hold that any portions of the SMP that are developed entirely at the local government's discretion are subject to RCW 82.02.020. But the fact that the particular provisions challenged by CRSP herein were required either by the SMA or by Ecology is not the key determinate in reaching our holding.[6] Rather, our holding is driven by the state's pervasive involvement throughout the entire SMP development process. Even where portions of a SMP are developed without a direct Ecology mandate, the state's statutorily-required role in oversight and approval dictates that RCW 82.02.020 does not apply.

VII
¶ 28 SMPs are developed at the insistence of, and with direction by, the state and are effective only upon state approval. Because of the state's involvement, SMP provisions do not constitute local regulations constrained by RCW 82.02.020. The superior court correctly so ruled.
¶ 29 Affirmed.
We concur: LAU and ELLINGTON, JJ.
NOTES
[1] The Building Industry Association of Whatcom County was allowed to intervene as a plaintiff but is not a party to this appeal.
[2] RCW 82.02.020 provides, in relevant part:

Except as provided in RCW 64.34.440 and 82.02.050 through 82.02.090, no county, city, town, or other municipal corporation shall impose any tax, fee, or charge, either direct or indirect, on the construction or reconstruction of residential buildings, commercial buildings, industrial buildings, or on any other building or building space or appurtenance thereto, or on the development, subdivision, classification, or reclassification of land. However, this section does not preclude dedications of land or easements within the proposed development or plat which the county, city, town, or other municipal corporation can demonstrate are reasonably necessary as a direct result of the proposed development or plat to which the dedication of land or easement is to apply.
[3] The "shorelines of the state" are defined at RCW 90.58.030.
[4] Ch. 43.21C RCW.
[5] WAC 173-26-186(5) states:

The policy goals of the act, implemented by the planning policies of master programs, may not be achievable by development regulation alone. Planning policies should be pursued through the regulation of development of private property only to an extent that is consistent with all relevant constitutional and other legal limitations (where applicable, statutory limitations such as those contained in chapter 82.02 RCW and RCW 43.21C.060) on the regulation of private property. Local government should use a process designed to assure that proposed regulatory or administrative actions do not unconstitutionally infringe upon private property rights.
[6] CRSP protests both the SMP's limitation on the buildable area of non-conforming lots and the SMP's uniform shoreline setbacks. Ecology required Whatcom County to revise its provision regarding the building area size on non-conforming lots before Ecology would approve of the county's SMP. In addition, the uniform shoreline setbacks were effectively required by the SMA in this instance because Whatcom County had designated all of its shorelines as critical areas. WCC 16.16.710. The SMA required Whatcom County to "provide[] a level of protection of critical areas at least equal to that provided by [Whatcom County's] critical areas ordinances." RCW 90.58.090(4). Thus, Whatcom County met this requirement by incorporating within the SMP the same buffer zones for shoreline areas as its critical areas ordinance contained.